56 So.2d 363

## ROYALS v. STATE.

### 4 Div. 138.

Court of Appeals of Alabama.

Jan. 9, 1951.

Rehearing Denied Jan. 30, 1951.

[4] 254 Ala. 514.
[5] 35 Ala.App. 383.

E. C. Boswell, of Geneva, for appellant.

A. A. Carmichael, Atty. Gen., and Albert E. Amos, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant has been convicted of manslaughter in the first degree.

■ The two counts on which this cause went to the jury were counts 1 and 3, of an indictment originally containing six counts.

Count 1, omitting the formal parts, charged that appellant "unlawfully and intentionally, but without malice, killed Mrs. Georgia E. Russell, by driving an automobile against, upon, or along an automobile in which Mrs. Georgia E. Russell was at the time, thereby causing her death."

Count 3 is identical with count 1, except that it concludes with the assertion "whereby, from the impact, she was killed," instead of the phrase "thereby causing her death" as stated in count 1.

These counts adequately informed the appellant of the offense with which he was charged, and were sufficient against the demurrers addressed to them. Head v. State, 35 Ala.App. 71, 44 So.2d 441.

■ The evidence introduced by the State tended to show that the deceased and five other ladies were passengers in an automobile driven by Nettie Mae Gilley. All of these women worked in a shirt factory in Geneva, and upon completion of their day's work were being driven toward their homes in or near Samson.

There were several automobiles proceeding along the highway. The car in which appellant was riding, or driving would speed up and pass these other cars, and then slow down until they again passed. This was repeated a number of times.

Miss Gilley, the driver of the car in which the deceased was riding, approached a jeep going in the same direction as she was driving. She blew her horn and pulled to her left preparatory to passing. At this time appellant's car came up from the rear, and ran parallel with and to the right of the Gilley car for some 25 to 50 feet. While the front wheels of the Gilley car were about even with the rear wheels of the jeep but to the jeep's left, the appellant attempted to cut through the space between the jeep and the Gilley car. His automobile struck the right front portion of the Gilley car, causing it to leave the road. From injuries sustained in the wreck the deceased died.

One witness testified that in her judgment the appellant's convertible automobile was travelling at a speed of 60 miles per hour at the time it struck the Gilley car.

Appellant did not stop after causing this wreck, but continued on down the road.

The appellant offered no evidence in the trial below.

Appellant's counsel argues strenuously that the refusal of several of his requested charges, which are affirmative in nature, constitute error in this case. The basis of counsel's contentions in this regard is that the evidence submitted by the State is insufficient to identify the appellant as the driver of the automobile causing this wreck.

It is true that in practically all instances the questions and answers were so framed as to refer to the "Royals car," and the driver of the Royals car was identified only as "he" and "him," or as "this boy." The evidence also shows that three persons were riding in the Royals car.

However, the record shows the following testimony during the direct examination of the witness Mary Katherine McColough:

"Q. The car that Royals was driving came up on the right hand side of you all? A. Yes sir.

"Q. And passed in front of you all, and to the left of the jeep, is that right? A. Yes sir.

"Q. What kind of car was it that Royals was running? A. It was a convertible. I dont know the make."

We have carefully examined the record to determine the names of the other two passengers in the Royals car. Nowhere are they identified. The above testimony taken in connection with other testimony, shows that "Royals" was driving the offending car. The appellant's name is Royals. With the other two occupants of the Royals car remaining totally unidentified, and the driver having been identified as "Royals," the appellant's name, we think this sufficient evidence from which the jury could have reasonably inferred that the Royals named as the driver of the Royals car, and Royals, the defendant then being tried, were one and the same.

In addition, the record further shows that Ruth B. Owens, one of the passengers in the Gilley car, testifies as follows:

"Q. Will you tell the jury just what happened at that time? A. All I know happened we were just going along home from work, and this James Houston Royals and two other boys were on another car, and there was a jeep ahead of us, and we had pulled out to go around the jeep, and had blown our horn, and as we pulled out on the left, he pulled on the right side of us, and then just after we got too close on to the jeep to cut in between us, he did anyway, and his back left bumper hit our right front fender."

It is to be noted that in the above portion of Mrs. Owens' testimony James Houston Royals, this appellant was the only passenger in the Royals car who was identified. The pronoun "he" found in her statement that "He pulled on the right of us" etc., can logically refer only to James Houston Royals, named earlier in the portion of her testimony above set out. In our opinion this testimony was also sufficient for the jury to have reasonably inferred that this appellant was the driver of the automobile causing the wreck, and additionally establishes to the required degree the identity of the appellant as the culpable driver.

No error therefore resulted from refusal of the several affirmative charges requested by the appellant because of lack of sufficient proof that appellant was the driver of the automobile causing deceased's death, nor in refusing appellant's motion for a new trial because of the alleged insufficiency of the evidence in this regard.

■ The elements essential to constitute manslaughter in the first degree are too well understood to invite a restatement of them in this opinion. We are clear to the conclusion that under the undisputed evidence as outlined above the jury were fully warranted in finding all such elements present. Certainly the appellant's conduct creates an overwhelming inference of reckless disregard of human life, and evidenced a well-nigh total disregard for the safety of occupants of other vehicles which the appellant knew or should have known were

on the highway. In this phase of the case the lower court likewise properly refused appellant's charges which were affirmative in nature.

█ Charge 1 was properly refused as being an incorrect statement of the law involved. Head v. State, 35 Ala.App. 71, 44 So.2d 441.

█ Charge 4 was refused without error under the doctrine of Smith v. State, 154 Ala. 31, 45 So. 626. It further appears that the principles sought to be enunciated were amply covered in the full and adequate oral charge of the court, though in somewhat different language. Certainly the jury was fully instructed in the court's oral charge as to all phases of manslaughter in the first degree, and the proof required to establish such offense.

█ Charge A–A was abstract under the evidence, and is also misleading. Its refusal was proper.

█ In the trial below appellant's counsel demanded the right to open and close the arguments to the jury since the defendant had not offered any testimony. The court denied this demand, and exception was reserved.

It has long been the practice in this jurisdiction that the plaintiff, the actor in the institution of the proceedings, is entitled to open and close the argument. Worsham v. Goar, 4 Port. 441; Ex parte Woodward Iron Co., 212 Ala. 220, 102 So. 103. Under Circuit Court Rule 19 if plaintiff waives the right of opening the argument he shall not have the right to close. The plaintiff in this proceeding, the State, did not waive its right to open and close the argument. Its right in the premises cannot be affected by defendant's actions. No error therefore resulted from the court's ruling in this instance.

It is our opinion that this record is free of error probably injurious to the substantial rights of this appellant and this cause is therefore ordered affirmed.

Affirmed.

## On Rehearing.

In his brief in support of this application for rehearing appellant's learned counsel contends we erred in stating that the testimony as to the identity of the driver of the Royals car was sufficient for the jury to have reasonably *inferred* that the appellant was the driver of the offending car. It is the view of appellant's counsel, as we interpret his brief, that such statement violates the basic legal principle that every accused is presumed innocent until proven guilty beyond reasonable doubt.

Our statement of which counsel complains does not, in our opinion, run contra to the above-mentioned basic legal principle.

The identity of the accused as the perpetrator of the offense is a part and parcel of the corpus delicti of every offense.

█ As stated in Patterson v. State, 202 Ala. 65, 79 So. 459, 460: "It is not required that the corpus delicti be proved by direct or positive evidence; it may be shown by evidence *from which only a reasonable inference* may be drawn by the jury that the offense has been committed. To its ascertainment, the proven facts and circumstances should be considered together, and if, upon the whole evidence, the jury are satisfied beyond a reasonable doubt (a) that the crime has been committed, and (b) that the defendant is the guilty perpetrator, it is the duty of the jury to convict. Ryan v. State, 100 Ala. 94, 14 So. 868; Fowler v. State, 170 Ala. 65, 54 So. 115." (Italics ours.)

█ To deny the propriety of sustaining convictions on legitimate or reasonable inference to be drawn from the evidence would in effect annihilate the efficacy of all circumstantial evidence. This has never been the law. Reasonable inferences from evidence, believed by the jury under the required rule, may well furnish a basis for proof beyond reasonable doubt. See Snead v. State, 251 Ala. 624, 38 So.2d 576.

Application denied.