McMILLAN, Judge.
The appellant, Billy Vaughn Patterson, was charged by a three-count indictment for violation of § 13A-7-7, Code of Alabama (1975), burglary in the third degree; § 13A-8-3, theft of property in the first degree; and § 13A-8-17, receiving stolen property in the first degree. The appellant was found guilty of the first two counts: burglary in the third degree and theft of property in the first degree. He was sentenced to a term of 30 years’ imprisonment, pursuant to the Habitual Felony Offender Act.
Gerald Weems testified that he was a policeman for the City of Decatur and that, during the early morning hours of December 18, 1982, he was called to the Hudson Oil Company pursuant to a report of a burglary. He further testified that he observed a hole which had been knocked in the interior wall of the ladies’ bathroom and noticed that the safe in the building had been opened by destroying the key way of the safe.
Charles T. Kasterson, the district supervisor for Hudson Oil Company, stated that he conducted an audit of the Hudson Oil Company station following the burglary and determined that $3,711.03 had been taken.
James Wilburn Ward, commonly known as “Squirrel,” testified that he had entered a plea of guilty in a case concerning this burglary and had received a sentence of 15 years' imprisonment. He testified that he was presently in the penitentiary pursuant to that sentence. He further testified that he had also gotten 15 years on some other cases. “Squirrel” Ward was called by the State as a hostile witness. He testified that, after he was arrested for the instant burglary, he did not ask to speak to the City detectives, but was told to do so by Paul Caine, the chief deputy of the Morgan County Sheriff’s Department. Thereafter, a waiver of rights form and “Squirrel’s” statement were marked into evidence. The court found the witness to be hostile “for *39 the purpose of cross-examination and impeachment.” “Squirrel” admitted that he was read his rights and that he had signed the waiver form. “Squirrel” further admitted that he voluntarily gave the statement and signed each page. When the prosecutor began to read the statement, the defense counsel objected on the grounds that the prosecutor was using the statement for impeachment purposes, but the witness had not yet testified. The prosecutor responded that he was not impeaching the witness, but was “going to ask him if he made each one of these statements.” The trial court allowed the prosecutor to continue, and the prosecutor began to read the witness’s pri- or statement into evidence. The defense counsel again objected, stating that the prosecutor should be asking the witness if what he had previously stated was the truth. The trial court overruled the objection. “Squirrel’s” previous statement indicated that the appellant, Hollis Mahaffey, known as “Pudgey,” and he had all participated in the burglary. “Squirrel” admitted at trial that he gave that statement to the officers. “Squirrel” testified that thereafter he gave another statement to the appellant’s attorney which stated that the appellant was not present during the burglary nor did he participate in the burglary. He further indicated that the reason he had given the previous version was because Paul Caine had threatened him with a life sentence. He further testified that Caine “wanted a charge on Billy and he wanted to question him about a murder case and Billy was gone out of state and he said that was the [only] way he could get him back.” The prosecutor asked “Squirrel” which statement was the truth. “Squirrel” responded that “Pudgey” and he committed the burglary alone and that the appellant was not involved; nor, he said, did he call the appellant on the night in question, nor did the appellant come to his house on that night.
Deborah Ward, the wife of “Squirrel” Ward, testified that, on the night in question, she was at home with her husband when “Pudgey” came to their house. “Squirrel” and “Pudgey” engaged in a conversation which she was unable to hear. Thereafter, “Squirrel” telephoned the appellant, who came to their home. She further testified that the three men talked for a minute and then left. They were gone for an hour or two and then returned to the Wards’ house. The three men sat at the dining room table, counting money and dividing it. The following day, Deborah Ward testified that she learned of the burglary and, during the police officers’ investigation of the case, she gave them the same statement which she gave atr trial. However, approximately two months prior to trial, she gave a different statement to the appellant’s attorney. She testified that she gave that statement because the appellant threatened the lives of her son and herself. On cross-examination, Deborah Ward admitted that she made the statement to the appellant’s attorney under oath and signed the statement. In that statement, she indicated that her husband had been imprisoned; that she was attempting to get a bond set; that she had felt that she should cooperate with the investigators in order to get her husband out of jail; that after the investigators had brought up the appellants’ name on several occasions, she “finally told them that he was involved in one of the crimes”; that such was not true and that her husband had telephoned someone other than the appellant; that the appellant never came to the house on that occasion; and that “I know for a fact that Billy Patterson was not the person called on that occasion, and I just told the investigators that simply because I felt they wanted Billy Patterson, and if I helped them get him I could possibly get my husband out of jail.”
Paul Caine testified that he was. chief deputy with the Morgan County Sheriff’s Department in 1983. He testified that he took “Squirrel” into custody and booked him on burglary charges. He further testified that “Squirrel” sent him a letter requesting the opportunity to talk to him. Caine testified that “Squirrel” gave a number of statements and confessions concerning different offenses committed in Morgan County. Caine further testified that “Squirrel’s” statements were voluntarily *40 given. Caine testified that “Squirrel” turned State’s witness on a number of co-defendants.
Sergeant John Richard Boyd, Jr., a detective for the City of Decatur, and Sergeant Jep H. Tellent of the City of Decatur Police Department, both testified that they worked on the investigation of “Squirrel” Ward. They each testified that they interviewed him and that his statements were voluntary. They further indicated that “Squirrel” turned State’s evidence.
Thereafter, the State rested and the defense counsel made a motion for a directed verdict of acquittal or, in the alternative, for suppression of the State’s evidence because the State had failed to make a prima facie case.
The defense counsel called two alibi witnesses. One was “Pudgey,” who testified that he was currently imprisoned on a 15-year sentence for the instant burglary. He testified that he pleaded guilty to the offense. He further testified that only “Squirrel” and he were involved in the burr glary. He testified that the appellant knew nothing about the burglary and was not involved. The defense rested and the defense counsel renewed his motion for judgment of acquittal on the basis that the State had failed to make out a prima facie case against the defendant. The motion was denied.
The appellant argues that the trial court erred in denying his motions for judgment of acquittal or, in the alternative, for suppression of the State’s evidence. The only evidence directly tying the appellant to the burglary was contained in “Squirrel’s” pri- or affidavit. At trial, “Squirrel” was called by the State as a “hostile” witness. Anderton v. State, 390 So.2d 1083 (Ala.Cr.App.), cert. denied, 390 So.2d 1087 (Ala.1980). “In the usual case a party placing a witness on the stand ‘thereby vouches for his credibility, and cannot impeach his own witness.’ See, Ward v. State, 376 So.2d 1112, 1116 (Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala.1979).” Wyllie v. State, 445 So.2d 958, 961 (Ala.Cr.App.1983). However, the State did not call “Squirrel” as its own witness, but presented him as a “hostile” witness for examination purposes and had him so designated by the trial court.
“Under these circumstances, where a witness has been properly declared ‘adverse’ or ‘hostile,’ prior to examination before the jury, that witness may be treated by the calling, or presenting, party as a witness for the opposition. Anderton v. State, [390 So.2d 1083 (Ala.Cr.App.1980)]. ‘This allows the party calling the adverse witness to examine the witness by use of the tools available to him on cross-examination including contradiction and impeachment.’ Anderton v. State, 390 So.2d 1083, 1086, supra; see also Lewis v. State, [414 So.2d 135 (Ala.Cr.App.), cert. denied, 414 So.2d 140 (Ala.1982)]; Moulds v. State, 426 So.2d 942 (Ala.Cr.App.1982).”
Wyllie v. State, supra, at 961.
Thus, the prosecution may elicit from a witness testimony that he in fact made prior contradictory statements and the State may elicit from the witness the contents of the prior statements through questioning. However, the contents of the prior inconsistent statements may be used by the jury only for limited purposes.
“Alabama, as early as 1888, adopted the rule that while a witness may be impeached by the use of prior contradictory statements, that such statement, ‘... should not be treated as original evidence of the facts of the case, nor be received for any other purpose than that of contradicting or impeaching the witness—Jones v. Pelham, 84 Ala. 208, 4 So. 22. ...’ Kennedy v. State, 85 Ala. 326, 5 So. 300. The Courts of this state have consistently held that the use of prior inconsistent statements, as used in the instant case, may not be considered as substantive evidence to prove the crime. Lewis v. State, 44 Ala.App. 319, 208 So.2d 228 (1968); Lynn v. State, 37 Ala.App. 400, 69 So.2d 485 (1954); Skinner v. State, 36 Ala.App. 434, 60 So.2d 363, cert. denied, 258 Ala. 713, 60 So.2d 367 (1952); Brown v. State, 31 Ala.App. 233,14 So.2d 596 (1943), cert. denied, 244 *41 Ala. 597, 14 So.2d 598; Manning v. State, 217 Ala. 357, 116 So. 360 (1928).
“The latest expression on this point of law by the Supreme Court of Alabama comes in the civil case of Cloud v. Moon, 290 Ala. 33, 273 So.2d 196 (1973). Justice Merrill, citing Lewis and Eisenberg [v. United States, 273 F.2d 127 (5th Cir.1959)], supra, held that the prior inconsistent written statement of a hostile witness called by the plaintiff could not be used as substantive evidence to establish the defendant’s liability.”
Isbell v. State, 57 Ala.App. 444, at 450, 329 So.2d 133 (Ala.Cr.App.), cert. denied, 295 Ala. 407, 329 So.2d 140 (Ala.1976).
“The rule is that prior inconsistent statements of a witness may be used to impeach the credibility of the witness but, generally, may not be considered as substantive evidence. Randolph v. State, 348 So.2d 858 (Ala.Cr.App.1977); C. Gamble, McElroy’s Alabama Evidence, § 159.02(1) (3d ed. 1977).” Varner v. State, 497 So.2d 1135 (Ala.Cr.App.1986).
This view of the role of impeachment testimony through a prior statement has been referred to as “the orthodox one.” See 3A Wigmore, Evidence § 1018 (Chad-bourn rev. 1970). “It is widely, but not universally, maintained by the courts that prior self-contradictions are not to be treated as having any substantive or independent testimonial value.” Id. However, as Wigmore points out, this view has received a great deal of criticism, particularly because requiring the “mental gymnastics of distinguishing between using a witness’s prior statement for testimonial purposes and using it only to contradict” may be expecting too much of a jury. See 3A Wigmore, Evidence § 1018 n. 2 (Chadbourn rev. 1970).
Because “Squirrel’s" affidavit could not be considered as substantive evidence, the State failed to prove a prima facie case of burglary in the third degree. Section 13A-7-7, Code of Alabama (1975), states:
“(a) (A) person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.”
The State did not satisfy its burden of proof as to the elements of burglary in the third degree. See Ex parte Williams, 468 So.2d 99 (Ala.1985).
As to the appellant’s conviction for theft of property in the first degree, § 13A-8-3, Code of Alabama (1975), requires in pertinent part:
“(a) The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.”
“Theft of property” is defined by § 13A-8-2:
“A person commits the crime of theft of property if he:
“(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
“(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.”
The testimony of State’s witness Deborah Ward showed that the appellant'met with two co-defendants, who admittedly participated in the theft, on the night in question and later returned with them with a large number of bills, which they counted and divided among the three of them. Although evidence was introduced at trial that Deborah Ward spent some of the money, knowing that it was stolen, “ ‘one who knowingly receives stolen property from the thief is not to be treated as an accomplice of the thief for purposes of corroboration in a trial of the thief for the principal offense.’ ” Humber v. State, 466 So.2d 165, 166 (Ala.Cr.App.1985), and cases cited therein.
“An exception to this general rule is that ‘a receiver of the stolen property is an accomplice of the thief for purposes of corroboration whenever there has been a prearranged plan or conspiracy between the receiver and the thief concerning the theft of, and subsequent purchase of, the property.’ [Citations omit *42 ted.] ‘[T]he receiver is an accomplice where he knew in advance that the theft would be committed, and agreed to receive the property which might be stolen.’ 50 Am.Jur.2d Larceny § 82 (1970). ‘[W]here the receiver participated in the theft as by aiding, abetting, or inducing it, or by joining in a prearranged plan whereby one is to steal the property and the other is to buy it, he is an accomplice of the thief.’ 23 C.J.S. Criminal Law 798(19) (1961).”
Humber v. State, supra, at 166-67.
There was no evidence introduced suggesting that Deborah Ward knew of the plans to commit the burglary. Moreover, she testified that she was unable to hear what the others were saying before they left the house on the night of the burglary. Because Deborah Ward was not an accomplice to the theft, her testimony could be used to connect the appellant to the theft. However, she testified on re-cross-examination that she was uncertain that the appellant was present at their house on the night prior to the burglary. Further, other than her testimony that the money on the table was predominantly bills, she failed to indicate the amount of money present. There is no showing in the record that any of the stolen money was found in the appellant’s possession or that the stolen money could be traced back to the appellant. Deborah Ward testified that the appellant and “Pudgey” visited her house quite often to play cards with “Squirrel.” The fact that the appellant was seen counting and dividing money with “Pudgey” and “Squirrel” is not sufficient alone to prove that he was involved in the theft, nor are those facts irreconcilable with possible theories of the appellant’s innocence. Weeks v. State, 428 So.2d 193 (Ala.Cr.App.1983); Ex parte Acree, 63 Ala. 234 (1879); Johnston v. State, 387 So.2d 891 (Ala.Cr.App.), cert. denied, 387 So.2d 905 (Ala.1980). Based on the evidence in the case sub judice, a reasonable jury could not have found that the evidence excluded every reasonable hypothesis except that of guilt. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
In Ex parte Williams, 468 So.2d 99 (Ala.1985), the prosecution produced no evidence placing the appellant at or near the scene of the offense on that night, and no evidence connecting him to the crime was adduced from searching his premises. The only evidence against him consisted of his fingerprints, along with the fingerprints of others, found on some of the stolen merchandise. The Court quoted Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978), stating:
“ ‘While a jury is under a duty to draw whatever permissible inferences it may from the evidence, including circumstantial evidence, mere speculation, conjecture, or surmise that the accused is guilty of the offense charged does not authorize a conviction. [Citations omitted.] A defendant should not be convicted on mere suspicion or out of fear that he might have committed the crime. Harnage v. State, 49 Ala.App. 563, 274 So.2d 333 (1972). While reasonable inferences from the evidence may furnish a basis for proof beyond a reasonable doubt, Royals v. State, 36 Ala.App. 11, 56 So.2d 363, cert. denied, 256 Ala. 390, 56 So.2d 368 (1951), mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence. [Citations omitted.]
“ ‘An inference is merely a permissible deduction from the proven facts which the jury may accept or reject or give such probative value to as it wishes. [Citations omitted.] It is a logical and reasonable deduction from the evidence and is not supposition or conjecture. Guesswork is not a substitute. [Citations omitted.] A supposition is a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur. [Citation omitted.] The possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur.’ ”
Ex parte Williams, at 101-02.
Because the only evidence connecting the appellant to the offense was “Squirrel’s” prior affidavit, which was inadmissible as substantive evidence of the appellant’s *43 guilt, we have no choice other than to reverse the appellant’s convictions and render judgments in his favor.
REVERSED AND JUDGMENTS RENDERED.
All the Judges concur.