[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1193 
The appellant, Walter Lewis Dooley, was convicted of the unlawful possession of cocaine, in violation of §13A-12-212(a)(1), Code of Alabama 1975. He was sentenced to six months in the Lee County jail and five years of probation.
The evidence tended to show that on November 18, 1988, Judge James C. Gullage issued a search warrant for 506-B Raintree Street in Opelika, Alabama. The warrant commanded the immediate search of "Bo Peep" and any other persons on the premises, for cocaine or any other controlled substance. (It was undisputed at trial that "Bo Peep" is the appellant's alias.)
At approximately 6:30 p.m. of that same day, the search warrant was executed by Detective Melvin Harrison and others from the Opelika Police Department and the Alabama Alcohol Beverage Control (ABC) Board. Robert Chambers, an undercover agent, walked up to the front door and knocked on it. Willie Joe Shelton opened the door and after a brief exchange with the agent, slammed the door. Detective Harrison and the other officers arrived at about this time to assist Agent Chambers.
Detective Harrison knocked on the door and announced that he was a police officer and had a search warrant for the house. Yells of "police" and "shuffling" noises were emanating from within the house. For approximately the next three or four minutes, the law enforcement officers tried unsuccessfully to gain entrance into the house. Finally, the appellant opened the door.
Detective Harrison pushed the appellant aside and went immediately to the bathroom, because he heard water running and the toilet flushing. The "J tubing" from underneath the sink was removed and the water that was in the "trap" was collected in a mason jar. It was later determined that this water contained 9.6 milligrams of cocaine per milliliter of water.
In the meantime, the people in the house were secured and a search was conducted. During the search, the officers found an orange-colored top to a syringe, a gold-colored spoon with white residue in it, a package of clear, zip-lock bags, and a piece of aluminum foil which had white powder in it. Before the appellant was arrested, he told Detective Harrison that he was an addict and had been an addict since the Vietnam War.
The appellant raises four issues on appeal.
 I
The appellant first contends that the trial court prejudiced the jury when it commented to the jury venire that "something happened overnight and two jurors for that case didn't show up." The appellant asserts that this comment raised inferences and speculations in potential juror's minds which biased his right to a fair trial. Therefore, the appellant contends that the trial court should have granted his motion to quash the venire and continue the case.
The record reads, in relevant part:
 "THE COURT: Ladies and gentlemen, we selected a jury Tuesday, I guess it *Page 1194 
was for the case of State versus Walter Lewis Dooley. The jury was not actually sworn and no evidence was heard in that case. I instructed the jury to be back yesterday morning at nine o'clock to actually begin the case — is that a juror that just walked out?
"THE BAILIFF: No.
 "THE COURT: All right. Something happened overnight and two of the jurors selected for that case didn't show up and because of that we could not begin the case and the Court is going to have to restrike that jury and select another twelve folks to sit on that case.
". . . .
 "It wouldn't be fair to either side for you to start making up your mind about this case until you've heard it all. Now, you're probably wondering why we're doing this over again from the other day. The reason that we had to start over again is one of the jurors selected in this case before called in on the code-a-phone Tuesday night and the code-a-phone said all jurors come back Thursday. Well, he thought that meant him too so he didn't come up here yesterday and that caused us a problem. The other juror who didn't show up had a sick child. And that's the reason that we had a problem in continuing with the jury originally selected in this case. It was just a misunderstanding on the part of one juror and a sick child on the part of the other. So occasionally those things happen, not very often, but we're going to change what the code-a-phone says from now on."
In McNeely v. State, 524 So.2d 375 (Ala.Cr.App. 1986), this court held:
 " 'Each case of allegedly improper remarks by a trial judge must be judged on its own peculiar facts. Oglen v. State, 440 So.2d 1172, 1175-76
(Ala.Cr.App.), cert. denied, Ex parte Oglen, 440 So.2d 1177 (Ala. 1983); James v. State, 337 So.2d 1332, 1341 (Ala.Cr.App. 1976).' Gamble v. State, 480 So.2d 38, 40 (Ala.Cr.App. 1985). Even if a trial judge's statements are erroneous, ' "[i]t cannot be seriously contended that every expression of opinion by the court, during the progress of the trial, . . . shall furnish ground for reversal." Lang v. State, 279 Ala. 169, 170, 182 So.2d 899
(1966).' Gamble v. State, supra, at 40. ' "Remarks by the trial judge may be open to criticism, but they are not error unless they have affected the result of the trial." ' Towns v. State, 494 So.2d 798, 800 (Ala.Cr.App. 1986), quoting Cox v. State, 489 So.2d 612 (Ala.Cr.App. 1985). See also McCovery v. State, 365 So.2d 358 (Ala.Cr.App. 1978)."
McNeely, supra, 524 So.2d at 380.
In the case at bar, it is clear that the remarks made by the trial court were simply an explanation as to why it was necessary to restrike the jury. We are of the opinion that this in no way prejudiced the jury. Thus, the trial court correctly denied the appellant's motion to quash the venire and his motion for continuance.
 II
The appellant's second contention is that the search warrant issued by Judge Gullage was invalid and, therefore, that the evidence seized was inadmissible. He asserts two reasons to support his contention.
First, the appellant argues that the search warrant was invalid because, he says, the person to be searched was incorrectly named or described. The search warrant reads, in pertinent part:
 "You are hereby commanded to make immediate search of the person and premises of Willie Marvin Dooley, alias 'Bo Peep,' who lives at 506-B Raintree Street in Opelika, Alabama, and any other persons therein, and any vehicles on the premise for the following property cocaine hydrochloride or any other controlled substance and United States Currency and if you find the same or any part thereof, to bring it forthwith before me, at my office at Opelika, Lee County, Alabama."
On November 6 or 7, 1988, Detective Harrison received information from a confidential informant that cocaine was being stored and sold at 506-B Raintree Street in Opelika. Based on this information, Detective *Page 1195 
Harrison arranged for the informant to make a controlled buy of cocaine at that address. He took the informant, who was equipped with a body microphone, to the residence. Detective Harrison then sat in his car across the street and listened to the informant purchase $25 worth of cocaine from a man who called himself "Bo Peep." (The appellant admitted at trial that his nickname is "Bo Peep.")
After the controlled buy was made, Detective Harrison returned to the police department and checked the police computer to find out whose name the electric service was in at 506-B Raintree Street. The service was in Willie Marvin Dooley's name, so that was the name placed on the search warrant. However, unknown to Detective Harrison, Willie Marvin Dooley was the deceased brother of the appellant. It was not until the police arrested "Bo Peep" that they found out his true identity.
The police responsible for obtaining and executing this warrant reasonably believed that Willie Marvin Dooley and "Bo Peep" were one and the same person. In Maryland v. Garrison,480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), police officers in Maryland made a similar mistake. In that case, Baltimore police officers obtained a warrant authorizing the search of the person of McWebb and "the premises known as 2036 Park Avenue third floor apartment." They reasonably believed that there was only one apartment on the third floor, but after discovering contraband in Garrison's apartment, saw that there was indeed a second apartment on the third floor.
The United States Supreme Court held that a warrant which authorizes a search that later turns out to be ambiguous in scope is nevertheless valid when it is issued. The validity of the warrant must be judged in light of the information available to the officers at the time they obtained the warrant. Maryland v. Garrison, supra, 480 U.S. at 85,107 S.Ct. at 1017-18. Because the mistake in the case at bar was objectively reasonable, suppression of the evidence is not required.
The appellant also argues that the search warrant was invalid because, he says, material statements in the affidavit in support of the warrant were substantially false. The facts establishing the grounds for issuance of the warrant were set out in the affidavit as follows:
 "[A] confidential informant who has been proven to be reliable in the past has purchased cocaine from a black male known as Willie Marvin Dooley, alias, 'Bo Peep,' at 506-B Raintree Street in Opelika, Alabama within the past forty-eight hours. The money used in the purchase was copied and the serial numbers recorded. The purchase was monitored and observed by Detective Melvin Harrison. Detective Harrison checked with the Opelika Light and Power and found the power at 506-B Raintree Street in Opelika, Alabama to be issued to Marvin Dooley."
The appellant claims that Detective Harrison did not actually "monitor" and "observe" the cocaine purchase at 506-B Raintree Street since the transaction actually transpired inside the residence. However, it is our opinion that the appellant's argument is purely semantical. Detective Harrison watched as the informant went into the residence and listened to the transaction via the informant's body microphone.
In Gray v. State, 507 So.2d 1026, 1028 (Ala.Cr.App. 1987), this court held that the use of the word "packages," rather than the word "package," in an affidavit in support of a search warrant based on a package of cocaine discovered by a mail carrier did not render the resulting search warrant invalid. Likewise, we find no material misstatements in the affidavit in the case at bar. Therefore, the warrant was valid and the evidence seized during the search was admissible.
 III
The appellant next contends that the evidence was insufficient to support the verdict. More specifically, the appellant argues that the State did not prove the requisite knowledge on his part. *Page 1196 
It is well established that in order for the State to make a prima facie case of possession of a controlled substance, the State must prove that the defendant had actual or constructive possession. Perry v. State, 534 So.2d 1126 (Ala.Cr.App. 1988);Hall v. State, 455 So.2d 94 (Ala.Cr.App. 1984). Furthermore, it must be proven beyond a reasonable doubt that the defendant had knowledge of the presence of the controlled substance.Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied,405 So.2d 725 (Ala. 1981). A defendant's knowledge of the presence of a controlled substance may be shown by circumstantial evidence. Korreckt v. State, 507 So.2d 558
(Ala.Cr.App. 1986); Temple v. State, 366 So.2d 740
(Ala.Cr.App. 1978).
It must be noted that the mere fact that evidence is of a circumstantial nature does not make it deficient; circumstantial evidence should be given the same weight as direct evidence, provided it points to the guilt of the accused. Linzy v. State, 455 So.2d 260 (Ala.Cr.App. 1984). Further, such evidence should be reviewed by this court in the light most favorable to the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975), and our judgment should not be substituted for that of the jury. Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
Under the principles which are set out above, we find that the State's evidence was sufficient to support the verdict. The house at 506-B Raintree was occupied by the appellant's mother. While the appellant denied that he lived at this residence, he did admit that he visited frequently and would stay for two or three days at a time. Further, when the appellant was arrested on this charge, he gave as his address 506-B Raintree Street.
When the police executed the search warrant, the appellant and his guests were the only persons present in the apartment. Indeed, during their surveillance of this apartment, police never even saw appellant's mother, as she was away visiting her daughter. When the police knocked on the door to execute the search, they could hear people yelling "Police!" while they "shuffled" around the apartment. Finally, while Detective Harrison was in the residence on the night of the search, the appellant told him that he was an addict and had been an addict since the Vietnam War. Therefore, it is clear from the above facts that the State sufficiently proved by circumstantial evidence that the appellant was in constructive possession of the cocaine found at 506-B Raintree Street.
 IV
The appellant's final contention is that the trial court erred when it allowed the State to offer testimony concerning a controlled buy of cocaine from 506-B Raintree Street. The appellant asserts that this evidence was so prejudicial as to injuriously affect his substantial rights.
The following occurred at trial concerning this contention. On direct examination, the appellant testified that he had no knowledge of drugs in his mother's apartment and that it had been a couple of years since he had used drugs. The State then requested that it be allowed to attack the appellant's credibility by questioning him about the controlled buy made at the apartment on the day before the search yielding the cocaine. Even though the trial court, in a motion in limine, had previously ruled against the introduction of such evidence, it agreed with the State that the appellant had opened the door for the evidence to be presented. The appellant's attorney moved for a mistrial prior to this testimony being admitted and the trial court denied the motion.
The State proceeded to cross-examine the appellant concerning the controlled buy. The State then presented the testimony of Detective Harrison concerning the controlled buy; however, the only connection that the State could prove between the appellant and the controlled buy was the fact that the person who sold the drugs called himself "Bo Peep."
At this point in the trial, the court stopped the testimony and the following occurred: *Page 1197 
 "THE COURT: I assume that when the State told the Court that it had evidence of a sale from the night before involving this Defendant that it could prove that through admissible evidence.
 "MS. McCOLLUM: Your Honor, this is the same evidence we had in the suppression hearing about the controlled buy. There's nothing testified any different than what we had in the suppression hearing on the search warrant.
 "THE COURT: Well, it doesn't make any difference what was testified to in the suppression hearing, I'm concerned now about the admissibility of this evidence as a means of attacking the credibility of this Defendant when he got on the stand and said he didn't know anything about any cocaine in the house. The State has got to tie this Defendant some way to this sale. Now, just because someone identified as Bo Peep, that's not sufficient it seems to me to tie this Defendant to it.
 "MS. McCOLLUM: Your Honor, he's testified that he's known as Bo Peep.
 "THE COURT: Well, I know that, but there may be other people that are known as Bo Peep, but still you've got to show, and I had assumed when you told me that this case, that this sale took place the night before that you could prove that this Defendant made the sale to the undercover officer.
". . . .
 "THE COURT: I propose to tell the jury to disregard all that testimony about a sale. What says the State?
"MS. McCOLLUM: Okay.
"THE COURT: Defense?
"MR. ROUNTREE: Fine, Your Honor."
The trial court then instructed the jury as follows:
 "THE COURT: Ladies and gentlemen, when I sent you out, just before I sent you out, you heard some evidence with reference to an alleged sale of cocaine from 506-B Raintree. I'm instructing you at this time to disregard that evidence. There is no legal evidence in this case of any such sale of cocaine and I want to ask you to put that out of your minds. And I want to ask you if there [is] any juror who cannot put that out of your mind, in accordance with my instructions, indicate that at this time.
 "All right. I want you to completely disregard that testimony and we will proceed with the legal testimony that you've heard in this case."
Thus, once the trial court determined that the State would not be able to prove the appellant's participation in the controlled buy, the court immediately stopped the testimony. The trial court then instructed the jury to disregard this testimony. The trial court asked the jury if there was anyone who could not disregard this evidence and there was no answer from the jury.
In Ringer v. State, 489 So.2d 646 (Ala.Cr.App. 1986), this court held:
 "A trial judge is in the best position to determine whether the prejudicial effects of an improper question can be eradicated by instruction to the jury. His determination of this matter should be accorded great deference. Retowsky v. State, 333 So.2d 193 (Ala.Crim.App. 1976). Pickett v. State, 417 So.2d 589 (Ala.Crim.App. 1982); Wysinger v. State, 448 So.2d 435
(Ala.Crim.App. 1983). There is a prima facie presumption against error when a trial judge immediately instructs the jury to disregard an improper question or remark. Mallory v. State, 437 So.2d 595
(Ala.Crim.App. 1983); Kelley v. State, 405 So.2d 728 (Ala.Crim.App.), writ denied, 405 So.2d 731
(Ala. 1981)."
489 So.2d at 650. Since the curative instructions are deemed to offset any error, Desimer v. State, 535 So.2d 238
(Ala.Cr.App. 1988), the trial court correctly denied the appellant's motion for a mistrial.
Appellant received a fair trial. Accordingly, his conviction and sentence are due to be, and they are hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1198