748 So.2d 897 (1999)
Thomas Anthony BOYINGTON
v.
STATE.
CR-97-2566.
Court of Criminal Appeals of Alabama.
July 9, 1999.
Rehearing Denied October 22, 1999.
*898 Leonard F. Mikul, Bay Minette, for appellant.
Bill Pryor, atty. gen., and J. Thomas Leverette, asst. atty. gen., for appellee.
COBB, Judge.
Thomas Anthony Boyington appeals his conviction in the Circuit Court of Baldwin County for possession of marijuana in the second degree. His sentence of one year's imprisonment was split, and he was ordered to serve 14 days in jail and to complete two years' unsupervised probation.
A careful review of the facts is essential to the ultimate decision in this case. There is essentially no dispute as to the facts.
Brad Burks was an officer in the special operations division for the Baldwin County Sheriff's Department at the time of the offense. He testified that during his eight-year career in law enforcement, he had concentrated in the area of drug offenses. *899 According to Burks, during his career he has had the opportunity to smell marijuana well over a thousand times and he has seen marijuana plants, marijuana packaged in every way possible, and marijuana prepared and ready to be smoked on countless occasions. He also testified that he had observed what he described as "activities outside bars" about 500 to a 1000 times.
On the night of September 7, 1996, he and Cpl. Steve Stewart, head of the narcotics division of the Gulf Shores Police Department, were assigned to the Baldwin County Drug Task Force. They were riding in an unmarked police vehicle, a 1990s model Pontiac Grand Prix, investigating complaints of drug use in parking lots in the area. The officers were dressed in plain clothesjeans and T-shirts at the time. The officers arrived at the Change of Pace bar near Robertsdale, at approximately 11:15 p.m. As they drove toward the parking area in the back of the bar they saw two people near an air conditioning unit behind the bar. No one else was nearby. The officers thought, based on their experience and observations of activity at bars, that they should watch the two individuals because they might be preparing to smoke a marijuana cigarette, "a joint". The officers stopped at a location 25 to 30 yards from the two individuals, who were later identified as Boyington and James Larry Raines, and observed them for about one minute. Although Boyington and Raines were not directly under a light, the area where they were standing was illuminated by a light on the back porch of the bar and by a nearby streetlight. Boyington was sitting on the air-conditioning unit, and Raines was standing next to him. Burks saw Raines light something he intended to smoke. Burks elaborated as follows:
"I saw [Raines] takeit would be like a shortwe didn't know what it was, and light it. The way he lit it and held it, the way it lit up, he blowed it, the way he smoked it, I believedI believed it was marijuana at the time.
"He smoked it and he passed it to Mr. Boyington, who was sitting on the air conditioner. Mr. Boyington took it and smoked it in [the] same way, real short puffs like that, like holding his breath.
R. 17-18. He stated that Boyington passed what he was smoking back to Raines after he had taken a puff. Burks distinguished the actions of someone smoking a joint from those taken by someone smoking a cigarette.
"Typically, when a person lights a cigarette, they hold it differently two fingers, smoke, light it, small smoke it [sic], inhale it, put it down, let the smoke out. They typically don't share cigarettes. They smoke an individual, a pack, get one out of the pack for each person when somebody smokes."
R. 19. Burks stated that the actions he observed led him to strongly suspect that Boyington and Raines were smoking marijuana. It took approximately 30 to 40 seconds for the officers to drive closer to Boyington and Raines, to get out of their car, to shine a flashlight at them and for Burks to say: "Sheriff's office. Y'all get your hands where I can see them." R. 21. Burks testified that he smelled "a very strong odor of burning marijuana" at that time. R. 23. According to Burns, he did not smell cigarette smoke. At this time, Burks stated that he was "certain" Boyington and Raines had been smoking marijuana. R. 63. Boyington, who was sitting on the air-conditioning unit, starting hitting his right hand on the side of the air-conditioning unit and rubbing something between the fingers of his right hand. Burks stated that he believed Boyington was "putting out the joint." R. 70. Burks stated that rubbing a hand-rolled marijuana cigarette in your hands will cause it to disintegrate into little pieces and fall to the ground. Raines started to walk away from the officers. When Burks told Raines to stop because he was under arrest, Raines took a green leafy substance from his *900 pocket and threw it into the air. Burks could see it "just going different directions." R. 23. Raines had to be forcibly subdued by the officers. A loaded gun and a holster were found on the ground under Raines when officers picked him up after he had been subdued. Boyington remained seated on the air conditioner. After handcuffing Boyington and Raines, the officers used flashlights to look for the substance that Raines had thrown in the air. The officers stated that the substance had dispersed into the grass and they found nothing. The officers also failed to find any remnants of the joint Boyington and Raines had been smoking. Nor did the officers find anything resembling a cigarette during there search. The only thing the officers found was a piece of plastic. They found it near the air conditioning unit, not where Raines had thrown into the air what Burks believed was been marijuana. Burks stated that marijuana is typically carried in plastic. The plastic recovered at the scene "had the odor of marijuana to it." R. 31. After being handcuffed, Boyington spontaneously stated that he had not done anything. This comment prompted Burks to smell the fingers of Boyington's right hand. Burks testified that Boyington's fingers smelled like marijuana. Raines and Boyington were carried to the city jail in Robertsdale and booked.
Charlie Jones was a lieutenant in Baldwin County Sheriff's Department in charge of the narcotics division and a member of the Baldwin County Drug Task Force at the time of the incident. He testified that he decided not to attempt to try to obtain fingerprints from the piece of plastic found at the scene because, based on his 10 years experience, he believed that it was next to impossible to lift or to identify latent fingerprints from this type material.
Steve Stewart had been employed by the police department in Gulf Shores as a narcotics investigator for approximately three and one-half years at the time of the crime. He was also a member of the drug task force. He testified that on the night of September 7, 1996, he was working with Officer Burks. He stated that as of September 7, 1996, he had smelled marijuana several hundred times. His testimony recounted observations similar to those recounted in the testimony of Officer Burks. Specifically, he stated that after observing Boyington and Raines's actions, it was his opinion that they were smoking a joint. When he approached Boyington and Raines, he smelled "the odor of a strong burning marijuana right in the area where [Boyington and Raines] were standing." R. 93. He stated that he was not focused on Boyington when they first approached because Raines looked like he was going to be a problem. Thus, he did not see Boyington rubbing his fingers as Burks described in his testimony. However, Stewart stated that he smelled Boyington's fingers and they smelled of marijuana. He stated that he saw Raines make a throwing motion with his arm but he did not see anything fall from his hand. He noted that his failure to see something might be explained by the fact that it took him longer to get out of the car and he was a greater distance from Raines than Burks was. After the subjects had been restrained he helped search the area for evidence but found only a piece of plastic.
On cross-examination of these witnesses, Boyington attempted to persuade the jury that the officers saw Boyington smoking a cigarette, that the odor of marijuana the officers said they smelled came either from inside the bar through the air conditioning unit, or from individuals who were outside before the officers arrived. No remnants of a cigarette or marijuana were found at the scene. It was also suggested that Raines ran from the officers because he was frightened. He pointed out that at the time of the arrest, it was late at night, they were outside a bar, he was surprised by two unknown men who were wearing jeans and T-shirts, and the men shined a bright flashlight in his eyes and blinded him as they rushed toward him, yelling. Boyington also pointed out that Raines *901 had a valid Florida pistol permit at the time he was apprehended, and that typically Florida pistol permits are accepted as sufficient in the Robertsdale area.

I.
Boyington contends on appeal that because no marijuana or drug paraphernalia was recovered from the scene of the alleged crime, the circumstantial evidence presented to obtain a conviction was insufficient to form the basis for, and inconsistent with, a rational hypothesis of guilt. We construe this to be a claim that evidence was insufficient to sustain a conviction. We agree.
"`This Court is well aware that where "circumstantial evidence points to the guilt of the accused, it will support a conviction as strongly as direct evidence." Newsome v. State, 570 So.2d 703, 710 (Ala.Cr.App.1989). Accord, Jones v. State, 514 So.2d 1060, 1067 (Ala.Cr.App.), cert. denied, 514 So.2d 1068 (Ala.1987). However, "no rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused's criminal agency in the offense charged." Benefield v. State, 286 Ala. 722, 724, 246 So.2d 483, 485 (1971), quoted in Crafts v. State, 439 So.2d 1323, 1325 (Ala.Cr.App.1983).
"Atwell v. State, 594 So.2d 202, 213 (Ala. Cr.App.1991), cert. denied, 594 So.2d 214 (Ala.1992).
"`"`While a jury is under a duty to draw whatever permissible inferences it may from the evidence, including circumstantial evidence, mere speculation, conjecture, or surmise that the accused is guilty of the offense charged does not authorize a conviction. [Citations omitted.] A defendant should not be convicted on mere suspicion or out of fear that he might have committed the crime. Harnage v. State, 49 Ala.App. 563, 274 So.2d 333 (1972). While reasonable inferences from the evidence may furnish a basis for proof beyond a reasonable doubt, Royals v. State, 36 Ala.App. 11, 56 So.2d 363, cert. denied, 256 Ala. 390, 56 So.2d 368 (1951), mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence. [Citations omitted.]
"`"`An inference is merely a permissible deduction from the proven facts which the jury may accept or reject or give such probative value to as it wishes. [Citations omitted.] It is a logical and reasonable deduction from the evidence and is not supposition or conjecture. Guesswork is not a substitute. [Citations omitted.] A supposition is a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur. [Citation omitted.] The possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur.'"'
"Patterson v. State, 538 So.2d 37, 42 (Ala.Cr.App.1987), conviction rev'd, 538 So.2d 43 (Ala.1988), quoting Ex parte Williams, 468 So.2d 99, 101-02 (Ala. 1985)."
Mullins v. City of Dothan, 724 So.2d 83, 86 (Ala.Cr.App.1998).
Here the proven facts are simple: Boyington was seen smoking something. When the officers arrived they smelled marijuana in the air, on his person, and on a piece of plastic discovered on the ground. No marijuana or drug paraphernalia was found at the scene or on the person of either Boyington or Raines.
"A person commits the crime of unlawful possession of marihuana in the second degree if, except as otherwise authorized, he possesses marihuana for his personal use only." § 13A-12-214(a), Ala. Code 1975. In order to establish the element of possession, "[t]he State must show... (1) actual or potential control, (2) intention *902 to exercise dominion, and (3) external manifestation of intent." Fleming v. State, 470 So.2d 1343, 1347 (Ala.Cr.App. 1985). Unlawful possession of a controlled substance is a Class A misdemeanor. § 13A-12-214(b), Ala.Code 1975.
Boyington's conviction was based on his "actual control" over marijuana. The prosecution attempted to prove Boyington's actual control over the marijuana by the officer's testimony that they saw Boyington smoking something they believed to be marijuana. However, Boyington was not in possession or constructive possession of marijuana when he was arrested at the scene of the alleged crime. Thus, the real question in this case is whether the officer's testimonythat they believed Boyington was in possession of marijuanacan alone be sufficient to uphold a conviction for possession of a controlled substance.
Boyington argues in his brief to this Court:
"Officer Burks testified that the codefendant threw a green, leafy substance into the air. Nothing was recovered. Prior cases dealing with throwing contraband out of a vehicle have supported a conviction for possession. However, in these cases the contraband was recovered. Hamilton v. State, 496 So.2d 100 (Ala.Cr.App.1986), and White v. State, 479 So.2d 1368 (Ala.Cr.App. 1985).
"Although law enforcement officers' training and experience in identifying the smell of marijuana, recognizing the way it is smoked, and recognizing the way it is packaged, have supported a finding of probable cause for a search or arrest, no cases have allowed this knowledge to support a conviction where no contraband was found. See Jones v. State, 432 So.2d 19 (Ala.Cr.App.1983), and Smith v. State, 606 So.2d 174 (Ala. Cr.App.1992), discussing probable cause based upon officers' training and experience in identifying marijuana."
(Appellant's brief at page 8.[1]) Boyington is correct. In each case reported by this court concerning a situation were illegal drugs were either thrown from a window or flushed down a toilet, the contraband or some residue from the contraband was recovered. See, Coslett v. State, 641 So.2d 302 (Ala.Cr.App.1993) (conviction upheld based on evidence that a medicine bottle containing cocaine residue, a plastic sandwich bag containing cocaine residue, and another plastic bag containing marijuana was recovered after being thrown from window); Carlisle v. State, 533 So.2d 645 (Ala.Cr.App.1987)(the defendant was seen throwing a bag out of the car window, the bag contained marijuana and was found in close proximity to the car); Martin v. State, 695 So.2d 141 (Ala.Cr.App.1996)(cocaine residue found on pipe served as the basis for the conviction; conviction was reversed on basis of illegality of search); Dooley v. State, 575 So.2d 1191 (Ala.Cr.App.1990)(detective heard toilet flushing and water running in the bathroom. The "`J tubing' from underneath the sink was removed and the water that was in the `trap' was collected in a mason jar; it was later determined that this water contained 9.6 milligrams of cocaine per milliliter of water"). We can find no case in Alabama upholding a conviction for possession of a controlled substance where the controlled substance was not confiscated from the defendant and identified or where the defendant was not in constructive possession of the controlled substance. Absent that factual scenario, the element of possession could not be established.
In the present case, considering that the officers did not see Boyington in possession of marijuana, that Boyington did not have in his possession or was not in constructive possession of marijuana when he was apprehended, that it is not a criminal *903 offense to smell like marijuana, and that there was a possibility that the odor of marijuana was the result of other bar patrons' smoking marijuana in the area before the officers arrived, the evidence presented at trial did not establish that Boyington was or had been in possession of marijuana.
Based on the facts presented in this case, we are not prepared to find that Boyington's conviction was based on anything more than mere possibility, suspicion, or guesswork. Regarding warrantless arrests for possession of a controlled substance we have stated: "`the detection of the odor of marijuana in a certain place will not inevitably provide probable cause to arrest a person who is at that place,'" State v. Betterton, 527 So.2d 743 (Ala.Cr. App.1986), aff'd, 527 So.2d 747 (Ala.1988) (quoting W. LaFave, 1 Search and Seizure at 650). We do not believe that odor of marijuana in a place or on a defendant's person is sufficient evidence to support a conviction for possession of marijuana. Therefore, Boyington's conviction is reversed and a judgment is rendered in his favor.
REVERSED AND JUDGMENT RENDERED.
McMILLAN and FRY, JJ., concur.
BASCHAB, J., dissents with opinion.
LONG, P.J., joins dissent.
BASCHAB, Judge, dissenting.
Because I disagree with the majority's conclusion that it was necessary that the substance the appellant possessed and smoked be confiscated and identified to sustain his conviction for second-degree possession of marijuana, I must respectfully dissent.
The Florida District Court of Appeals addressed a similar fact situation in Dean v. State, 406 So.2d 1162 (Fla.Dist.Ct.App. 1981), review denied, 413 So.2d 877 (Fla. 1982). In Dean, that court upheld a conviction for possession of marijuana, based on the officer's observation of the defendant smoking what he believed to be a marijuana cigarette, even though the officer did not confiscate and identify the object as a marijuana cigarette. The court explained its holding as follows:
"Officer Reaume had substantial experience in narcotics investigation and was trained to recognize marijuana. His testimony that he saw all three occupants of the car smoking a cigarette in a manner commonly used in smoking marijuana coupled with his statement that he smelled a strong odor of marijuana smoke coming from the car immediately thereafter provided sufficient evidence for the jury to find, as it did find, that Tommy Dean had possessed not more than twenty grams of marijuana. The introduction of the contraband or the production of a chemical analysis is not always essential to a conviction for possession of a controlled substance. State v. Raulerson, 403 So.2d 1102 (Fla. 5th DCA, 1981.) See Sommers v. State, 404 So.2d 366 (Fla. 2d DCA 1981)."
406 So.2d at 1164.
Similarly, in Alabama, we have held:
"`The corpus delicti is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury.' (citation omitted)"
McCloud v. State, 401 So.2d 314, 319 (Ala. Cr.App.1981) (quoting McDowell v. State, 238 Ala. 101, 189 So. 183 (1939)). For example, in Roughton v. State, 38 Ala.App. 17, 77 So.2d 666, cert. denied, 262 Ala. 703, 77 So.2d 667 (1954), the Alabama Court of Appeals upheld a conviction for possession of a prohibited liquor even though the arresting officers did not confiscate the liquor from the defendant. In Roughton, the defendant, who was being pursued by police officers, threw an object out of his *904 automobile and the smell of moonshine whiskey immediately filled the air. Roughton, 38 Ala.App. at 18, 77 So.2d at 667. About one hour later, when the officers returned to the location where the defendant had thrown the object from his automobile, they found a broken one-gallon jug and a damp place on the ground that smelled strongly of moonshine whiskey. Id. The Alabama Court of Appeals held:
"The uncontroverted testimony of the officers was sufficient proof of the illegal character of the contents of the jug.
"`A charge of illegally possessing prohibited liquors can be sustained by circumstantial evidence just as any other material fact in a criminal charge.' Green v. State, 31 Ala.App. 359, 18 So.2d 872, 873.
"If from the facts and circumstances proven, there arises a reasonable inference adverse to the innocence of the accused a jury question is presented."
Roughton, 38 Ala.App. at 19, 77 So.2d at 667 (citations omitted).
Similarly, the State presented sufficient circumstantial evidence in this case to establish that the substance the appellant possessed and smoked was marijuana. The officers' testimony about the manner in which the appellant and Raines smoked the cigarette-like object, the distinctive odor of burning marijuana at the scene, Burks' observation of Raines throwing a green leafy substance that looked like marijuana into the air and of the appellant hitting the cigarette-like object against the air conditioner as if to destroy it, the easily destructible nature of a marijuana cigarette, the cellophane found at the scene that smelled like marijuana, the odor of marijuana on the appellant's fingers, the lack of the odor of burning tobacco, and not finding any warm cigarette butts or filters on the ground in the area where the appellant and Raines were constituted sufficient circumstantial evidence to establish that the substance they saw the appellant possess and smoke was marijuana. Therefore, I respectfully dissent.
LONG, P.J., concurs.
NOTES
[1] In both Jones and Smith, cited in the above-quoted portion of the appellant's brief, the arresting officers made traffic stops, smelled marijuana inside the stopped automobile, and saw marijuana in plain view.