Derrick LeKeith O'Neal was indicted for the offense of possession of cocaine, in violation of § 13A-12-212(a)(1), Code of Alabama 1975. The jury found O'Neal guilty as charged in the indictment; he was sentenced to seven years in the state penitentiary, and an application for probation was entered. At the probation hearing, the *Page 463 
trial court ordered O'Neal to attend the Disciplinary Rehabilitation Program ("Boot Camp") for a period of up to 180 days. Subsequent to the probation hearing, the trial court discovered that O'Neal had an outstanding warrant on a new charge, and the court set aside its order and denied probation. Three issues are raised on appeal.
 I
O'Neal contends that the trial court erred in refusing to give the jury his requested written charges numbered 1, 2, 3, 4, 6, 7, 9, 10, and 13.
Charges 1, 6, 7, 10, and 13 dealt with constructive possession and exclusive possession of premises. A careful review of the record reveals that these charges were due to be refused because they were not based upon the evidence and would therefore be confusing and misleading to the jury.
Officer Donna Long of the City of Opelika Police Department testified that she observed O'Neal standing with Richard Lewis Jordan at the corner of South Fourth Street and Avenue C. According to Long, as she drove up and stopped her car, she saw an object in O'Neal's hand and she saw O'Neal walk away from the corner, drop the object from his hand onto a prepared concrete foundation, and then return to the corner. Long testified that she exited her vehicle and retrieved the object O'Neal had dropped. Once Long had examined the object, she arrested O'Neal for possession of cocaine. Although Long testified that she could not recognize the object as being cocaine when she first saw the object in O'Neal's hand, she testified without equivocation that the object she retrieved from the concrete foundation was the same object that she observed in O'Neal's hand. Taylor Noggle, a forensic scientist with the Alabama Department of Forensic Sciences, testified that the object that he received in a sealed plastic bag from Officer Long was crack cocaine.
Because the State's evidence, if believed, establishedactual possession of cocaine on a public
street, any charges dealing with constructive possession or exclusive possession of premises would be abstract, would not be predicated on the evidence, and would be confusing and misleading to the jury. The refusal to give requested charges is not improper where those charges are confusing and misleading, and are not based on the evidence. Bogan v.State, 529 So.2d 1029 (Ala.Cr.App. 1988). The trial court therefore properly refused charges 1, 6, 7, 10, and 13 on this ground.
Charges 2, 3, and 4 dealt with convicting O'Neal of possession of cocaine based upon a mere suspicion, a fear, or a possibility. Although the facts in this case do not indicate the possibility of a conviction based on speculation and suspicion, these refused charges were substantially covered in the court's oral charge as well as in O'Neal's requested charges 5 and 8, which instructed the jury that they must be convinced that circumstantial evidence must exclude any reasonable inference consistent with O'Neal's innocence. Hence, the trial court properly refused charges 2, 3, and 4 because those charges were substantially covered in the court's oral charge and in O'Neal's charges 5 and 8, which were read to the jury.
Charge 9 also dealt with verdicts founded upon speculation and included a statement regarding the State's burden of proof. O'Neal contends that the court's refusal to give charge 9, when coupled with the court's charge to the jury that itmay consider the defendant's presumption of innocence as a matter of evidence, constituted reversible error. We disagree.
The court charged the jury that the defendant has no burden of proof and that he comes into court presumed to be innocent and that presumption of innocence stays with him until such time that each juror is satisfied beyond a reasonable doubt that he is guilty. The court further charged that this presumption of innocence is evidence that the jury may consider on the defendant's behalf. The court correctly charged the jury that the defendant is presumed innocent and that this presumption remains with him until overcome by *Page 464 
proof beyond a reasonable doubt. The court further told the jurors that the evidence upon which they must base their decision consisted of 1) sworn testimony that they had heard in the courtroom, 2) documents or items that had been admitted into evidence and that they had with them in the jury room, and 3) the presumption of innocence that surrounds the defendant. The court further charged the jury that the State had the burden of proof to satisfy each juror beyond a reasonable doubt and to a moral certainty of O'Neal's guilt.
Because charge 9 was substantially covered in the court's oral charge and because the court's oral charge correctly and substantially addressed the defendant's presumption of innocence, the trial court did not err in refusing to give charge 9.
 II
O'Neal contends that the evidence was insufficient to convict him of possession of a controlled substance.
The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt. Johnson v. State, 555 So.2d 818 (Ala.Cr.App. 1989).
In the case sub judice, the State presented an eyewitness who saw an object in O'Neal's possession. The witness then saw O'Neal place the object in a certain area, and she went there and retrieved it. Establishing the proper chain of custody, the State then presented expert testimony that the object was crack cocaine.
In Carlisle v. State, 533 So.2d 645 (Ala.Cr.App. 1987), this court ruled that the evidence of an officer observing the defendant dropping a bag that was later found to contain cocaine on a street median was sufficient to sustain a defendant's conviction.
We therefore hold that the evidence presented by the State was clearly sufficient to support the jury's verdict of possession of cocaine.
 III
O'Neal contends that the State used its peremptory strikes in a discriminatory manner in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
In the instant case, there were six black jurors on the venire, and 4 were struck by the State, leaving two black jurors to serve on the jury. The prosecutor in this case stated that she struck black veniremembers numbers 7 and 42 because they were late to court. Black veniremember number 33 was struck because his cousin had been arrested and convicted of a drug charge. Veniremember number 12 was struck because the prosecutor had prosecuted her husband in a child support case.
The court further inquired of the prosecutor as to prospective jurors number 7 and 42 who had been struck because they were late to court. As to veniremember number 7, the prosecutor further stated that the veniremember resided in the Hardaway Homes area, which was a high crime area with a reputation for drug activity, and that the State believed that this veniremember was related to a person who had been prosecuted for drugs. Because the prosecutor had no reason, other than dilatoriness, for striking number 42, the court disallowed the strike of number 42 and had that veniremember placed back on the jury, resulting in 3 of the 12 jurors being black.
"Once the defendant makes a prima facie showing [of purposeful discrimination in selection of the petit jury], the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." Batson v.Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723,90 L.Ed.2d 69 (1986).
 "It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors *Page 465 
are motivated by intentional racial discrimination.Ex parte Jackson, 516 So.2d 768 (Ala. 1986). Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal, Batson, supra,476 U.S. at 98, 106 S.Ct. at 1724, and should be reversed on appeal only if they are clearly erroneous. Ex parte Branch, 526 So.2d 609
(Ala. 1987)."
Ex parte Lynn, 543 So.2d 709, 712 (Ala. 1988),cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338.
Based on the foregoing, we find no "clear error" in the trial court's determination, particularly in light of the court's decision to place veniremember number 42 back on the jury as a result of the prosecutor's ostensibly insufficient race-neutral explanation. The reasons given for striking veniremember number 33 and number 12 were based on considerations other than race, and the trial court correctly so ruled. Ward v. State,539 So.2d 407, 408 (Ala.Cr.App. 1988). The reason initially given by the prosecutor for striking veniremember number 7 (because she was late for court) was race neutral. SeeCurrin v. State, 535 So.2d 221 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988). The additional reasons given by the prosecutor for striking juror number 7 (residence in a high crime area and "thought" to be related to drug defendant) are insufficient by themselves and have been specifically rejected in Ex parte Bird, 594 So.2d 676 (Ala. 1991).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.