In the early morning hours of March 12, 1995, a fire engulfed a rental home in Hoover, Alabama, causing significant damage and forcing the evacuation of its residents. At that time, the occupants of the house included the appellant, Walter Ballenger; his best friend and the leaseholder, Joe Cameron; and Cameron's family, including his wife, his mother, his daughter and his son. Ballenger was charged with arson. It is undisputed that the fire began as the result of the malfunction and melting of an automatic drip coffeemaker. The central issue at trial was whether Ballenger had intentionally sabotaged *Page 1034 
the coffeemaker in order to burn the house down. Ballenger was convicted of arson in the first degree, a violation of § 13A-7-41, Ala. Code 1975. Ballenger was sentenced to 15 years in prison; that sentence was suspended and Ballenger was placed on 2 years' probation.
Ballenger argues that the evidence was insufficient to support his conviction for arson. We agree.
 "In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.
Faircloth v. State, 471 So.2d 485, 488
(Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985).
 "A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust."
Jackson v. State, 516 So.2d 726 (Ala.Crim.App. 1985). However, "the court . . . shall direct the entry of judgment of acquittal as to any charged offense . . . for which the evidence is insufficient to support a finding of guilty beyond a reasonable doubt." Rule 20.1, Ala.R.Crim.P.
Section 13A-7-41, Ala. Code 1975, sets out the elements for arson in the first degree.
 "(a) A person commits the crime of arson in the first degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion, and when:
 "(1) Another person is present in such building at the time, and
 "(2) The actor knows that fact, or the circumstances are such as to render the presence of a person therein a reasonable possibility.
(emphasis added.) The State may establish the elements of arson by circumstantial evidence. Minnis v. State,690 So.2d 521 (Ala.Crim.App. 1996). Circumstantial evidence will be given equal weight as direct evidence, "provided it points to the guilt of the accused." Id. at 523. Although this court will not substitute its judgment for that of a jury, "our obligation is to determine if there exists any reasonable theory from which the jury could have concluded that the defendant was guilty of the crime charged." Id. Therefore, "when guilt is predicated upon circumstantial evidence, the test to be applied is whether a jury might reasonably conclude that the evidence excludes every reasonable hypothesis except that of guilt." Ashurst v. State, 462 So.2d 999, 1003
(Ala.Crim.App. 1984).
It is undisputed that the fire began as a result of the melting of the coffeemaker. A forensic electrical engineer gave expert testimony that the malfunction was caused by someone's tampering with the coffeemaker's fuse and thermostat. Joe Cameron testified that he had taught Ballenger about electronics. Ballenger, because he lived in the home, had unlimited access to and the opportunity to tamper with the coffeemaker. Several members of the Cameron household heard Ballenger say he had taken the coffeemaker apart to clean it. Mrs. Cameron remembered that Ballenger wanted to repair the coffeemaker because it was not keeping coffee hot.
Accepting as true all the evidence introduced by the State, and according the State all legitimate inferences therefrom, and considering all the evidence in a light most favorable to the prosecution, all of which we must do, Faircloth, supra, we conclude that the jury could have reasonably found that Ballenger had tampered with the coffeemaker and that, as a result of his tampering, the coffeemaker malfunctioned, melted and burned the house.
However, that evidence, although it may prove negligence, does not prove arson. The evidence must prove beyond a reasonable doubt that Ballenger intentionally tampered with the coffeemaker in order to burn the dwelling. The evidence as to this element of intent is woefully weak. *Page 1035 
After reviewing the evidence concerning Ballenger's electronic expertise, his opportunity, and his access to the coffeemaker, we must still ask the question: Why would Ballenger want to burn his own dwelling down while he was sleeping in the home at the time? The State argued there was circumstantial evidence to prove several motives for arson. In reviewing this circumstantial evidence offered to prove the crucial element of intent, and all the legitimate inferences that could be drawn from it, we must ask "whether a jury might reasonably conclude that the evidence excludes every reasonable hypothesis except that of guilt." Ashurst, 462 So.2d at 1003.
The motives and circumstantial evidence that the State argues proved that Ballenger had the intent to commit arson are discussed below.
1. Ballenger was resentful of the Camerons and wanted themall to move from the house. Joe and Kathy Cameron testified that the afternoon before the fire they had argued with Ballenger about moving. The Camerons testified they were happy with the house but that Ballenger was not. The Camerons' daughter, Honey Jo, testified that she overheard Ballenger say one time that if it were not for him, "Joe and Kathy wouldn't have anything." This evidence, the State argues, proves Ballenger had a motive to burn the house — he wanted to move. This evidence does not take into account the fact that, shortly after the argument, the Camerons and Ballenger were sitting around drinking coffee together, and did not appear angry at one another. In fact, the Camerons deny that there was any animosity between Ballenger and the Cameron family. Kathy Cameron testified she "always thought of [Ballenger] as a friend." Joe Cameron testified that he and Ballenger had been friends for over 20 years and "had a very good relationship over the years." Ballenger had lived with and worked with the Camerons off and on for most of those 20 years. There was no evidence presented that indicated that Ballenger had made any preparations to move from the house, that he had moved any of his personal property from the house, or that he had taken steps to insure his property located in the house. As a result, the evidence indicated that Ballenger gained nothing financially from the fire and, indeed, that he lost personal property along with a place to live.
2. Ballenger wanted to sue the manufacturer of thecoffeemaker. The State presented evidence that, after the fire, Ballenger consulted an attorney regarding a possible lawsuit against the manufacturer of the coffeemaker to recoup his financial losses. The State argues that this evidence showed that Ballenger had a motive to burn the home. In fact, it was the State's witness, Joe Cameron, who testified that it was his business partner, Reed Jacoway, who insisted that the Camerons and Ballenger consult his attorney to try and recover some of their financial losses from the fire. Joe Cameron testified:
 "Mr. Jacoway is really the one that more or less kind of insisted we go see his attorney. That was his attorney. And we thought nothing about going to see no attorney as far as I was concerned and Walter [Ballenger] was concerned until Reed told us to go see his attorney about it, because there might — if, in fact, the coffee pot did cause the problem, then the company should be liable because we lost all of our furniture and clothing and everything, you see.
3. Ballenger placed himself in a safe part of thehouse. The fire marshal testified he suspected Ballenger instead of Joe Cameron because the Camerons were in an upstairs bedroom during the fire, and Ballenger was "in a safe area of the house at the time of the fire." The evidence indicated that, at the time the household awoke to the smell of smoke, the first floor of the house was fully engulfed in flames. Ballenger testified that, upon being awakened by the barking of the family dog, he discovered the fire and dialed 911. He and the Camerons' son were trapped in the basement bedrooms by the fire; they could not leave by the basement door because the door had been padlocked, and the keys were on the first floor and unreachable. Ballenger, the Camerons' son, and the dog managed to escape the fire only by squirming through the laundry room window. By the time Ballenger got out of the *Page 1036 
burning home, the fire department was already on the scene. There was no evidence that Ballenger knew how the kitchen fire would spread throughout the house, so that he could position himself in a "safe area" inside the burning house.
4. Following the fire, Ballenger left Birmingham and hid inFlorida. The State suggested that Ballenger's move to Florida was evidence of his guilt. The evidence showed that Ballenger stayed in Birmingham with the Camerons until April 19, over a month after the fire. Both Joe and Kathy Cameron testified that Ballenger had a habit of staying and working with them for a few years, then going away for a year or two before returning. This was a pattern that had repeated over the years of their friendship. The evidence indicated that Ballenger returned to the Miami, Florida area, where he had lived and worked in the past and where, at the time of his arrest, he was an office manager for a construction company. Evidence indicated that the Camerons knew where Ballenger was and had, in fact, visited with him about a year after he moved back to Florida.
The circumstantial evidence offered to prove Ballenger's motive and intent to tamper with the coffeemaker in order to burn down the house simply does not exclude every reasonable hypothesis but guilt. Ashurst, supra. The evidence showed that Ballenger and the Camerons argued the afternoon before the fire, but also that there was no animosity or resentfulness among these lifelong friends that would allow a reasonable inference of intent to commit arson. The evidence showed Ballenger talked to a lawyer after the blaze, but also showed he did so, along with the Camerons, at the insistence of a business partner. There was a complete lack of evidence that Ballenger made any preparations to move from the house or to protect himself or any of his personal property from a fire. Indeed, the evidence showed he was trapped in the basement of the burning home and that the only exit door had been padlocked shut. The evidence showed that Ballenger did move to Florida after the fire, but also showed this move was in keeping with his past behavior and that the Camerons knew where he was. There was no evidence indicating Ballenger had fled to prevent detection or arrest.
This court is mindful of its obligations in reviewing a case for sufficiency of the evidence. We have accepted the State's evidence as true, have reviewed all the evidence in a light most favorable to the State, and have accorded the State all legitimate inferences available from that evidence.Faircloth, supra. Having done so, we are nonetheless convinced that there is not sufficient evidence to support a finding of guilt beyond a reasonable doubt that Ballenger intentionally damaged the home he occupied by causing a fire. Rule 20.1, Ala.R.Crim.P. The preponderance of the evidence against the judgment is so decided as to clearly convince this court that it is wrong and unjust. Jackson, supra. It is therefore the judgment of this court that the conviction against Walter Ballenger be reversed and a judgment rendered in his favor.[1]
REVERSED AND JUDGMENT RENDERED.
All the Judges concur.
[1] The resolution of the evidentiary issue pretermits any discussion of Ballenger's argument concerning the chain of custody of certain evidence.