The appellant, Jajaun Martez Oliver, was convicted in Opelika Municipal Court of menacing, a violation of § 19-353 of the Opelika Municipal Code of Ordinances. He appealed his conviction to the Lee Circuit Court for a trial de novo and was found guilty following a jury trial. The trial court fined him $500 and sentenced him to 180 days in the city jail, with 90 days suspended and 90 days to serve.
The sole issue on appeal is whether the evidence was sufficient to submit the menacing charge to the jury. Oliver preserved this issue in the trial court by moving for a judgment of acquittal on sufficiency grounds at the close of the City's case and again at the close of all the evidence.
Initially, we note our well-established standard for reviewing challenges to the sufficiency of the evidence: "`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034
(Ala.Crim.App. 1998), quoting Faircloth v. State,471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State,697 So.2d 497, 498 (Ala.Crim.App.4997), quoting O'Neal v. State,602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State,728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v.State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally
sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042
(Ala. 1978).
The City's evidence with respect to the issue presented is best summed up by the following testimony of Opelika police officer Brandon Tech, who, the record indicates, *Page 1231 
stopped Oliver for a seat-belt violation and for failure to properly signal before executing a turn:
 "[Officer Tech]: I exited my police vehicle, walked to the driver's side window of the car I had stopped to make contact with the driver of the vehicle and inform him why he had been pulled over.
 "[Prosecutor]: All right. At that point in time, did you observe the occupant of the vehicle?
 "[Officer Tech]: Yes, sir, I did.
 "[Prosecutor]: Is that person in court today?
 "[Officer Tech]: Yes, sir, he is.
 "[Prosecutor]: Could you point that person out?
 "[Officer Tech]: Mr. Oliver. Right here (pointing).
 "[Prosecutor]: Okay. All right. Now, was the window of [Oliver's] vehicle up or down?
 "[Officer Tech]: It was down.
 "[Prosecutor]: All right. And as you were — did you engage in a conversation with [Oliver] at that time?
 "[Officer Tech]: I started to. I said good evening.
 "[Prosecutor]: Was there something that stopped you from engaging in the conversation?
 "[Officer Tech]: That's correct.
 "[Prosecutor]: What was that?
 "[Officer Tech]: I noticed in his lap, there was a silver pistol. He had it sitting in his lap with his right hand on top of the pistol with his finger extended directing [sic] sitting on top of the trigger well with the gun cocked up and pointed up out the window.
 "[Prosecutor]: Let me ask you if you would step down. I don't believe that — you are trying to demonstrate how the pistol was — was held.
 "(Witness complies.)
 "[Prosecutor]: Would you just take a seat here in front of the jurors?
 "(Witness complies.)
". . . .
 "[Prosecutor]: You say that you observed a silver pistol. Is that correct?
 "[Officer Tech]: Yes, sir. That's correct.
 "[Prosecutor]: And where was that pistol located?
 "[Officer Tech]: It was in his lap with his hand on it like this (indicating).
 "[Prosecutor]: All right.
 "[Officer Tech]: It was kind of — part of it down on the inside of his leg and kind of coming up on the inside of his leg.
 "[Prosecutor]: All right. And was the — was his hand on the pistol itself?
 "[Officer Tech]: Yes, sir, it was.
 "[Prosecutor]: What portions of the pistol were his —
 "[Officer Tech]: His palm —
 "[Prosecutor]: — hands touching at that time?
 "[Officer Tech]: His palm was — was resting on the butt of — of the weapon and his finger was extended on the trigger well. It was not actually on the trigger itself; it was on the trigger well with the gun pointing up out the window.
 "[Prosecutor]: All right. And in what direction was the barrel of the pistol pointing?
 "[Officer Tech]: Directly at my face.
 "[Prosecutor]: All right. Now, after you made the observations concerning the pistol, did you say anything to [Oliver]?
 "[Officer Tech]: I took about a half a step back from the vehicle and drew my weapon and ordered him to drop — drop the weapon and exit the vehicle. *Page 1232 
 "[Prosecutor]: AH right. You say you drew your weapon. Does that mean you removed it from your holster?
 "[Officer Tech]: Yes, sir, I did.
 "[Prosecutor]: And after you removed it from your holster, what did you do with the weapon at that time?
 "[Officer Tech]: I pointed it directly at Mr. Oliver.
 "[Prosecutor]: All right. You pointed it with one hand or did you have it held with two hands?
 "[Officer Tech]: I believe I had it with two hands.
 "[Prosecutor]: All right. And what directions did you give to Mr. Oliver at the time?
 "[Officer Tech]: I told him to drop the weapon and exit the vehicle.
 "[Prosecutor]: All right. When you meant drop, you mean remove his hands from the weapon?
 "[Officer Tech]: I believe — it was remove his hands.
 "[Prosecutor]: Is that what you intended?
 "[Officer Tech]: Yes, sir.
 "[Prosecutor]: And — and step out of the vehicle. Is that correct?
 "[Officer Tech]: That is also correct.
 "[Prosecutor]: All right. How did Mr. Oliver respond to those commands?
 "[Officer Tech]: He kind of was looking straight ahead. He wasn't looking at me and did nothing at first. Just kept sitting there with his hands on — on the weapon.
 "[Prosecutor]: All right. And for how long did he do that, just sitting with his hands on the weapon?
 "[Officer Tech]: It wasn't long. A second. Two seconds, maybe. Three seconds.
 "[Prosecutor]: All right. And then after that, what happened?
 "[Officer Tech]: The second time I screamed — I said, `Drop the weapon or you are going to get killed,' I think were my exact words.
 "[Prosecutor]: And what did he do?
 "[Officer Tech]: He raised the weapon about three or four inches with his hands still holding it; his fingers were still on the trigger well, but not on the trigger itself, and then dropped it. And then —
 "[Prosecutor]: All right.
 "[Officer Tech]: — put his hands up.
 "[Prosecutor]: As he raised the weapon out of his lap, you had commanded him to drop the weapon. Right?
 "[Officer Tech]: That's correct.
 "[Prosecutor]: Not raise it?
 "[Officer Tech]: That's correct.
 "[Prosecutor]: As he raised the weapon out of his lap, in what direction was the barrel pointed?
 "[Officer Tech]: The whole time the barrel was pointed directly at me.
 "[Prosecutor]: All right And how long did it take for him to raise the pistol out of his lap?
 "[Officer Tech]: About three seconds before he raised it. After I had — I had originally told him to drop it.
 "[Prosecutor]: All right. So he — according to you, he had his hand on the pistol approximately seven seconds total from the time you originally told him — initially told him to drop the pistol?
 "[Officer Tech]: Yes, sir."
(R. 109-14.)
Section 19-353 of the Opelika Municipal Code of Ordinances, which tracks § 13A-6-23, Ala. Code 1975, provides that "[a] person commits the crime of menacing if, by physical action, he intentionally places *Page 1233 
or attempts to place another person in fear of imminent serious physical injury." Oliver argues specifically that the City failed to present any evidence from which the jury could have found `physical action" on his part that was intended to place or attempt to place Officer Tech in fear of imminent serious physical injury.
Viewing the evidence in the light most favorable to the City, we conclude that the evidence was sufficient to submit the menacing charge to the jury. Officer Tech testified that Oliver had a pistol pointed at Officer Tech's head when he approached the driver's side of Oliver's vehicle and that when he ordered Oliver to drop the weapon Oliver hesitated, holding the pistol three to four inches above his lap. A reasonable inference could be drawn from the evidence that Oliver intended to frighten Officer Tech by pointing the pistol at him. There was sufficient evidence of physical action on Oliver's part; therefore, the trial court properly denied Oliver's motion for a judgment of acquittal.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.