Two delinquency petitions were filed in the Blount Juvenile Court, charging the appellant, J.M.A., with unlawfully possessing and unlawfully distributing a controlled substance in violation of § 13A-12-212 and § 13A-12-211, Ala. *Page 2 
Code 1975. The juvenile court found both charges to be true, adjudicated J.M.A. delinquent, and placed J.M.A. on probation. J.M.A. appealed to this Court. We reverse and render a judgment in J.M.A.'s favor.
At J.M.A.'s trial, Cindy Seaver testified that she is an assistant principal at Hayden High School. Seaver stated that on December 2, 2009, the school resource officer, Deputy Joe Franklin, turned over two orange oval-shaped pills to her and she began an investigation into the source of the pills. Seaver stated that her investigation began with student A.S., who admitted to possessing the pills, and that the investigation led to J.M.A. Seaver testified that she took written statements from A.S. and two other students, K.F. and O.B.
Seaver recalled that during the course of her investigation, she interviewed J.M.A. with his mother present. According to Seaver, J.M.A. did not make any admission regarding the pills.
Brian Kirk testified that he is an assistant principal at Hayden High School. Kirk stated that the school administration received a tip that J.M.A. had been *Page 3 
distributing pills and commenced an investigation. Kirk testified that, during the course of the investigation, he and Seaver interviewed J.M.A. and J.M.A. denied distributing pills. According to Kirk, he and Seaver took written statements from three students: M.D., A.S., and O.B.
M.D. testified that he is a student at Hayden High School and that he knew J.M.A. when J.M.A. attended Hayden High. M.D. stated that he saw J.M.A. give pills to O.B. while M.D. was standing only 5 to 10 feet from J.M.A. in the school hallway. M.D. testified that J.M.A. then offered him white pills for two dollars. M.D. stated that he refused the pills, went to the administration office, and told Assistant Principal Kirk what he had seen. In the written statement he gave Kirk and Seaver, M.D. did not mention seeing J.M.A. give pills to O.B.
O.B. testified that in December 2009, he solicited J.M.A. for pills during physical-education class. According to O.B., J.M.A. gave him pills in exchange for two dollars in the school bathroom the next day. O.B. stated that he understood the pills to be Adderall.[1] O.B. testified that he later took *Page 4 
CR-09-1540 the pills.
William Joseph Franklin testified that he is a Blount County Sheriff's Deputy and the school resource officer at Hayden High School. Deputy Franklin stated that on December 2, 2009, two students brought pills to him and he turned the pills over to Assistant Principal Seaver. Deputy Franklin testified that Seaver and the school administration then *Page 5 
conducted an investigation that he was not involved in and that Seaver later returned the pills to him. Deputy Franklin stated that he then placed the pills into an evidence locker at the Blount County Sheriff's Department, where the pills were later picked up by the narcotics officer, Deputy Jeff Kirkland.
Deputy Jeff Kirkland testified that he is a narcotics officer with the Blount County Sheriff's Department and confirmed that he picked up the pills Deputy Franklin deposited in a narcotics-evidence locker. Deputy Kirkland then packaged the pills for delivery to the Department of Forensic Sciences ("DFS"), and he delivered the pills to DFS on April 20, 2010.
Raena Motes-Garmon testified that she is a forensic scientist working in the drug-chemistry section of DFS. Motes-Garmon testified that she analyzed the pills delivered to DFS by Deputy Kirkland and that her testing of the pills revealed them to be methylphenidate.
At the conclusion of testimony, the juvenile court adjudicated J.M.A. delinquent on both petitions. The juvenile court denied J.M.A.'s motion for a judgment of acquittal made *Page 6 
at the close of the State's evidence and again posttrial. This appeal ensued.
 I.
Initially, we address a procedural issue raised by the State. The juvenile court entered its order adjudicating J.M.A. delinquent on May 26, 2010.[2] On June 8, 2010, J.M.A. timely filed a motion to alter, amend, or vacate[3] the juvenile court's decision. J.M.A.'s motion was denied by operation of law on June 22, 2010, under Rule 1(B), Ala. R. Juv. P. J.M.A. timely filed a notice of appeal on July 6, 2010. The juvenile court entered an order on July 12, 2010, purporting to amend its previous finding of delinquency to instead adjudicate J.M.A. delinquent ofattempted possession and distribution of a controlled substance. On July 22, 2010, this Court entered *Page 7 
an order declaring void the juvenile court's order of July 12, 2010, pursuant to Rule 1(B).
On appeal, the State contends that J.M.A.'s June 8, 2010, motion was not denied by operation of law on June 22, 2010. Therefore, the State argues, the juvenile court's order of July 12, 2010, purporting to amend its original finding of delinquency, should not have been declared void by this Court. Specifically, the State argues that Rule 24.4, Ala. R. Crim. P., governed J.M.A.'s posttrial motion, giving the juvenile court 60 days to rule on J.M.A.'s motion before it was denied by operation of law.[4] Rule 1(B), Ala. R. Juv. P. states:
 "All postjudgment motions, whether provided for by the Alabama Rules of Civil Procedure or the Alabama Rules of Criminal Procedure, must be filed within 14 days after entry of order or judgment and shall not remain pending for more than 14 days. A postjudgment motion is deemed denied if not ruled on within 14 days of filing."
Despite the clear language of Rule 1(B), the State contends that Rule 1 applies only to civil matters because of a comment to the Rule stating: *Page 8 
 "Because juvenile jurisdiction may be exercised by district courts as well as circuit courts, the reference in Rule 1 to the Alabama Rules of Civil Procedure contemplates the Rules of Civil Procedure as modified for applicability in the district courts where juvenile jurisdiction is exercised at the district court level. This Rule is meant to apply in dependency, custody, or other proceedings of a civil nature filed in the juvenile court where no rule of juvenile procedure addresses the matter."
(Emphasis added.)
The comment's "reference in Rule 1" to the Alabama Rules of Civil Procedure is a reference to Rule 1(A), which states, in relevant part:
 "If no procedure is specifically provided in these Rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to those matters that are considered civil in nature, and the Alabama Rules of Criminal Procedure shall be applicable to those matters that are considered criminal in nature."
Rule 1(A) and its comment indicate that the Alabama Rules of Civil Procedure applicable to district courts shall apply to juvenile proceedings of a civil nature in district courts where no rule of juvenile procedure addresses the matter. See Ex parteVaughn, 495 So. 2d 83, 86 n. 2 (Ala. 1986) ("Because juvenile jurisdiction may be exercised by district courts as well as by circuit courts, the Alabama Rules of Civil Procedure referred to in the juvenile rule contemplate the *Page 9 
civil rules as modified for applicability in the district courts where juvenile jurisdiction is exercised at the district court level. Committee Comments to Rule 1, Ala. R. Juv. P.").
The cited comment does not contradict that plain language of Rule 1(B) stating that a postjudgment motion provided for by the Alabama Rules of Criminal Procedure is denied by operation of law if not ruled on within 14 days. Accordingly, at the time of the juvenile court's July 12, 2010, attempt to modify its earlier order, J.M.A.'s posttrial motion had been denied by operation of law. Thus, this Court will review the juvenile court's original finding adjudicating J.M.A. delinquent on a charge of possessing and distributing a controlled substance.
 II.
The sole issue J.M.A. raises on appeal is the sufficiency of the evidence to support the juvenile court's adjudication of delinquency. A juvenile court may find a child delinquent "on proof beyond a reasonable doubt, based upon competent, material, and relevant evidence[] that the child committed the acts by reason of which the child is alleged to be *Page 10 
delinquent."§ 12-15-212(a), Ala. Code 1975. The general standard for assessing the sufficiency of the evidence is applicable to our review of juvenile proceedings. See J.W.B. v. State,651 So. 2d 73, 75 (Ala. Crim. App. 1994) (applying "`[t]he general standard by which we review the evidence'" to a juvenile proceeding [(quoting Robinette v. State,531 So. 2d 682, 687 (Ala. Crim. App. 1987)]).
 "`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). `"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."` Nunn v. State, 697 So.2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala. Crim. App. 1992). `"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). `The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte *Page 11 Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)."
Oliver v. City of Opelika,950 So. 2d 1229, 1230 (Ala. Crim. App. 2006).
Moreover,
 "`"This Court is well aware that where `circumstantial evidence points to the guilt of the accused, it will support a conviction as strongly as direct evidence.' Newsome v. State, 570 So. 2d 703, 710 (Ala. Cr. App. 1989). Accord, Jones v. State, 514 So. 2d 1060, 1067 (Ala. Cr. App.), cert. denied, 514 So. 2d 1068 (Ala. 1987). However, `no rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused's criminal agency in the offense charged.' Benefield v. State, 286 Ala. 722, 724, 246 So. 2d 483, 485 (1971), quoted in Crafts v. State, 439 So. 2d 1323, 1325 (Ala. Cr. App. 1983)."
 "`Atwell v. State, 594 So. 2d 202, 213 (Ala. Cr. App. 1991), cert. denied, 594 So. 2d 214 (Ala. 1992).
 "`"`"While a jury is under a duty to draw whatever permissible inferences it may from the evidence, in c luding circumstantial evidence, mere speculation, conjecture, or surmise that the accused is *Page 12 
guilty of the offense charged does not authorize a conviction. [Citations omitted.] A defendant should not be convicted on mere suspicion or out of fear that he might have committed the crime. Harnage v. State, 49 Ala. App. 563, 274 So. 2d 333 (1972). While reasonable inferences from the evidence may furnish a basis for proof beyond a reasonable doubt, Royals v. State, 36 Ala. App. 11, 56 So. 2d 363, cert. denied, 256 Ala. 390, 56 So. 2d 368 (1951), mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence. [Citations omitted.]"`"
 "`Patterson v. State, 538 So. 2d 37, 42 (Ala. Cr. App. 1987), conviction rev'd, 538 So. 2d 43 (Ala. 1988), quoting Ex parte Williams, 468 So.2d 99, 101-02 (Ala. 1985).'"
 "Mullins v. City of Dothan, 724 So. 2d 83, 86 (Ala. Cr. App. 1998)."
Boyington v. State,748 So. 2d 897, 901 (Ala. Crim. App. 1999).
To establish a prima facie case of unlawful possession of a controlled substance, the State must prove that J.M.A. "possess[ed] a controlled substance enumerated in Schedules I through V."§13A-12-212, Ala. Code 1975. To establish a *Page 13 
prima facie case of unlawful distribution of a controlled substance, the State must prove that J.M.A. "[sold], furnish[ed], [gave] away, deliver[ed], or distribut[ed] a controlled substance enumerated in Schedules I through V."§ 13A-12-211, Ala. Code 1975. Both methylphenidate[5] and Adderall[6] are Schedule III controlled substances. § 20-2-27(a)(1), Ala. Code 1975.
In the present case, the State presented insufficient evidence for the juvenile court to adjudicate J.M.A. delinquent of possessing or distributing a controlled substance. The evidence presented by the State concerns two sets of pills. First, the State presented evidence indicating that two students brought orange pills to Deputy Franklin and that Franklin turned the pills over to Assistant Principal Seaver. The pills were ultimately sent to DFS for testing that revealed them to be methylphenidate. Assistant Principal Seaver and Assistant Principal Kirk testified that their investigation led them to J.M.A., but the State presented no evidence of the substance of the investigation linking the *Page 14 
pills to J.M.A. The State presented no competent, material, and relevant evidence demonstrating that the pills given to Deputy Franklin were ever possessed or distributed by J.M.A.
Second, the State presented the testimony of M.D. and O.B. M.D. testified that he saw J.M.A. give white pills to O.B. in the school hallway and that he was then offered pills by J.M.A. O.B. testified that he received pills from J.M.A. in the school bathroom that he understood to be Adderall and that he consumed the pills immediately upon receiving them.
The State presented no evidence indicating that the pills given to O.B. by J.M.A. were the same pills delivered to Deputy Franklin and ultimately tested by DFS and confirmed to be a controlled substance. This Court has upheld convictions for possession of a controlled substance despite a lack of scientific testing where a witness who confiscated or took possession of the substance testified to having sufficient knowledge or expertise to identify the substance. See Hanks v. State,562 So. 2d 536, 540 (Ala. Crim. App. 1989), rev'd on othergrounds, 562 So. 2d 540 (Ala. 1989) (upholding admission of police officer's opinion testimony that substance was marijuana, despite lack of scientific testing, where "the *Page 15 
record contain[ed] ample evidence of the testifying police officer's experience and training in the area of drug enforcement and drug detection and identification"); Headley v. State,720 So. 2d 996, 998 (Ala. Crim. App. 1998) ("The evidence does not have to consist of scientific testing, so long as the proper foundation for the arresting officer's own experience in identifying marijuana is laid."); Powell v. State,804 So. 2d 1167, 1170 (Ala. Crim. App. 2001) (affirming conviction where "the witness who identified the substance as marijuana[] had experience in recognizing marijuana[] and was familiar with its odor and appearance"). Cf. Robinson v. State,636 So. 2d 1264, 1265 (Ala. Crim. App. 1993) (finding insufficient evidence to sustain a prison disciplinary action where "[t]he record fail[ed] to show the officer's expertise or the knowledge the he relied on in concluding that the seeds were marijuana").
In the present case, however, O.B. did not testify that he had any knowledge or expertise that would allow him to identify the pills given to him by J.M.A. as Adderall.[7] Nor *Page 16 
did O.B. testify as to any circumstantial evidence indicating that the pills were a controlled substance, such as the effect the pills had on him after he consumed them.
Finally, although O.B.'s testimony is unclear, O.B.'s testimony could be read as stating that J.M.A. told him that the pills were Adderall. However, without competent corroborating evidence, J.M.A.'s statement to O.B. is insufficient evidence upon which to adjudicate him delinquent.
 "The mere `confession' or statement of a defendant to a given offense, without any corroborating evidence, is not sufficient to sustain a conviction. See, e.g., Smith v. United States, 348 U.S. 147 (1954) (the general rule is that an accused may not be convicted on his own uncorroborated confession); State v. Chatelain, 188 P.3d 325 (Ore. App. 2008) (defendant's confession is not legally sufficient to support a conviction unless there is adequate corroboration); and People v. O'Neil, 165 N.E.2d 319 (Ill. 1960) (voluntary confession of an accused is insufficient, without corroborating evidence, to authorize a conviction)."
G.E.G. v. State, 54 So. 3d 941, 948 (Ala. Crim. App. 2008),rev'd on other grounds, 54 So. 3d 949, 956 (Ala. 2010) ("The *Page 17 
issue before this Court is whether the rule that a defendant may not be convicted solely on the basis of a confession should also apply to a guilty-plea conviction. We hold that the issue of the admissibility of the defendant's confession without corroborationis waived by the defendant's plea ofguilty." (emphasis added)).
The State presented no competent, material, and relevant evidence indicating that the pills given to O.B. by J.M.A. were actually Adderall, methylphenidate, or any other controlled substance. Even when viewing the evidence in the light most favorable to the State, the State presented insufficient evidence for the juvenile court to adjudicate J.M.A. delinquent based on proof beyond a reasonable doubt.
Based on the foregoing, the juvenile court's adjudication of delinquency is reversed, and a judgement is rendered in J.M.A.'s favor.
REVERSED AND JUDGMENT RENDERED.
Welch, P.J., and Windom, Kellum, and Burke, JJ., concur.
[1] O.B. testified as follows:
 "Q. [PROSECUTOR:] And, did you discuss what kind of pills they were?
 "A. [O.B.:] No, sir.
 "Q. Ok, you didn't —
 "A. Not that I remember.
 "Q. You don't remember?
 "A. I think we did, sir.
 "Q. Ok, you think what?
 "A. I think we did. I think I say, yes, sir.
 "Q. Ok, what kind of pills did you understand them to be?
 "A. Adderal[l].
 "Q. Adderal[l]?
 "A. Sir, yes, sir."
(R. 49-50.)
[2] The juvenile court's order was signed on May 21, 2010. The order was entered into the State Judicial Information System on May 26, 2010. Thus, under Rule 58(c), Ala. R. Civ. P., and Rule 1(A), Ala. R. Juv. P., the order adjudicating J.M.A. delinquent was "entered" on May 26, 2010.
[3] J.M.A.'s motion to "alter, amend, or vacate" is treated as a motion for a new trial provided for under Rule 24.1, Ala. R. Crim. P. State v. Monette,887 So. 2d 314, 315 (Ala. Crim. App. 2004) ("A motion to alter, amend, or vacate a sentence is the functional equivalent of a motion for a new trial and `should be treated the same procedurally as a motion for new trial or a motion in arrest of judgment. . . . `Melvin v. State,583 So. 2d 1365, 1366 (Ala. Crim. App. 1991).").
[4] "No motion for new trial or motion in arrest of judgment shall remain pending in the trial court for more than sixty (60) days after the pronouncement of sentence, except as provided in this section." Rule 24.4, Ala. R. Crim. P.
[5] Also known as Concerta.
[6] Adderall is composed of amphetamine compounds, a Schedule III controlled substance.
[7] There is a variance between the petitions, which allege that J.M.A. possessed and distributed a controlled substance, namely generic concerta (methylphenidate), and the evidence presented at trial attempting to show that J.M.A. possessed and distributed Adderall (amphetamine) (also a controlled substance). J.M.A. did not raise the issue of variance at trial, however, and raises the issue for the first time on appeal only as an argument against the sufficiency of the evidence. Regardless of the variance, however, the State presented insufficient evidence to support a finding of delinquency based on the possession and/or distribution of either methylphenidate or amphetamine. *Page 1