JOINER, Judge.
A delinquency petition was filed in the Juvenile Court of Montgomery County, charging C.L.F. with third-degree assault, see § 13A-6-22, Ala.Code 1975. After conducting an evidentiary hearing, the juvenile court found the charge in the petition to be true and adjudicated C.L.F. delinquent. The juvenile court sentenced C.L.F. to six months’ probation upon completion of the Department of Youth Services (“DYS”) HIT program.
At trial, Astrid Thomas, a case manager at the Davis Treatment Center (“the Center”) in Montgomery, Alabama, testified that on July 20, 2011, she was monitoring C.L.F. and nine other juveniles while they were eating breakfast in the cafeteria at the Center. Thomas testified that C.L.F. was sitting next to another juvenile — M.C. Thomas stated that, at some point, C.L.F. told her that he was having problems with some of the other students and asked Thomas to move him. Thomas testified that she told C.L.F. “to be the mature one and get up and remove [himself].” Thomas stated that she had previously warned C.L.F. that he should not sit next to M.C. because of other arguments. Thomas testified that C.L.F. was “the louder of the two” and that she told C.L.F. to move but he ignored her and continued to argue with M.C. Thomas stated that C.L.F. told M.C. that he was “going to kick [M.C.’s] ‘A’ ” and that M.C. did not “know who [he was] messing with.”
Thomas stated that, at that point, she told C.L.F. to come to her and talk to her about his issues. Thomas testified that as C.L.F. was walking toward her he continued to get louder and continued to threaten M.C. Thomas testified that M.C. sat quietly and did not say anything to C.L.F. Thomas testified that C.L.F. then turned and called M.C. a “fake ass blood.”[1]
Thomas stated that M.C. then picked up a chair and charged at C.L.F. Thomas stated that, to get to C.L.F., M.C. had to push her out of the way. Thomas stated that M.C. pushed her down and began wrestling with C.L.F. Thomas testified that, when she got back up, M.C. had C.L.F. pinned in a corner and when she approached them M.C. ran toward the administrative building and C.L.F. went back into the cafeteria and sat down “as if nothing happened.” Thomas stated that, as a result of getting pushed down by M.C., she injured her arm. Thomas testified that she had no feeling in her arm and that she went to a free-standing medical facility to seek medical treatment for the injury. Thomas stated that her arm was placed in a sling and had to be stabilized for a couple of days.
*293 Cynthia Williams testified that she is employed at the Center as a cook, and she was working at the Center on July 20, 2011. Williams stated that while she was working she witnessed a fight between C.L.F. and M.C. Williams stated that C.L.F. was talking with M.C. and that C.L.F.’s voice was “really loud.” Williams stated that C.L.F.’s voice grew louder and that Thomas told C.L.F. several times to come over to her. Williams stated that Thomas then had to get up and go get C.L.F. and as Thomas was escorting C.L.F. to the door M.C. ran toward them with a chair. Williams testified that, after the altercation, there was “a lot of commotion trying to get the kids settled,” and Thomas appeared to be hurt.
M.C. testified that on July 20, 2011, he was at the Center and C.L.F. argued with him, called him names, told him to shut up, and told him that he could “whoop him.” M.C. stated that Thomas then intervened and escorted C.L.F. away from the table. M.C. testified that he came after C.L.F. with a chair and that Thomas tried to stop him so he pushed Thomas out of the way in order to get to C.L.F. M.C. testified that he was angry with C.L.F. and wanted to hit him. On cross-examination M.C. testified that he was angry with C.L.F. for calling him a “fake ass blood” because, he said, he is “not a fake blood.”
After the State rested, C.L.F. moved for a judgment of acquittal, which the juvenile court denied. C.L.F. filed a posttrial motion, which the court also denied. This appeal followed.
The sole issue presented on appeal is whether the juvenile court erred when it denied C.L.F.’s motion for a judgment of acquittal.[2] Specifically, C.L.F. contends that the State failed to present sufficient evidence that C.L.F. recklessly caused injury to Thomas because, he says, the State’s evidence showed that a third party — M.C.—caused Thomas’s injury.
Because this is a juvenile court matter, where the juvenile court judge is the trier of fact, we are mindful of the following:
“Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).”
Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). See R.L.L. v. State, 564 So.2d 474, 476 (Ala.Crim.App.1990); C.D.U. v. State, 552 So.2d 178, 180 (Ala.Crim.App.1989) (“When evidence is presented ore tenus, the court’s decision must be given every reasonable presumption and we will not overturn its finding ‘if it was supported by credible evidence unless it was palpably wrong.’ Department of Human Resources v. Middleton, 519 So.2d 540 (Ala.Civ.App.1987).”). Furthermore,
“ ‘Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based on competent, *294 material^] and relevant evidence.” The credibility of witnesses and the truthfulness of testimony in delinquency proceedings is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Crim.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.’ ”
R.B.H. v. State, 762 So.2d 382, 383 (Ala.Crim.App.1999) (quoting A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995)). Given the above-stated standard of review, we now turn to C.L.F.’s claim on appeal.
C.L.F. contends, as stated above, that the evidence presented at the hearing established that Thomas was attacked by M.C. — not by C.L.F. — and, therefore, C.L.F. argues that the evidence was insufficient to support C.L.F.’s delinquency adjudication for third-degree assault under § 13A-6-22(a)(2), Ala.Code 1975. The State, on the other hand, contends that the evidence presented at the hearing supported C.L.F.’s adjudication as delinquent of third-degree assault because, it says, “[e]ven though [C.L.F.] did not directly strike [Thomas], his actions in provoking an altercation were an unreasonable and conscious disregard of a substantial and unjustifiable risk.” (State’s brief, p. 11.) Specifically, the State contends that “[o]ne juvenile constantly haranguing and cursing at a second and continuing a string of insults creates a reasonable likelihood that an altercation would occur resulting in injury to [someone] other than the combatants.” (State’s brief, p. 11.)
“The general standard for assessing the sufficiency of the evidence is applicable to our review of juvenile proceedings. See J.W.B. v. State, 651 So.2d 73, 75 (Ala.Crim.App.1994) (applying ‘ “[t]he general standard by which we review the evidence” ’ to a juvenile proceeding (quoting Robinette v. State, 531 So.2d 682, 687 (Ala.Crim.App.1987))).
“ ‘ “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “ ‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).’
“Oliver v. City of Opelika, 950 So.2d 1229, 1230 (Ala.Crim.App.2006).”
J.M.A. v. State, 74 So.3d 487, 492 (Ala.Crim.App.2011).
*295 Section 13A-6-22(a)(2), Ala.Code 1975, provides that “[a] person commits the crime of assault in the third degree if ... [h]e recklessly causes physical injury to another person.” Section 13A-2-2(3), Ala. Code 1975, defines the term “reckless” as follows:
“A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.... ”
Thus, to prove third-degree assault the State’s evidence had to first show that C.L.F. was “aware of and consciously disregarded a substantial and unjustifiable risk” that M.C. would, as a result of C.L.F.’s insults, react violently and cause physical injury to Thomas and that the risk of M.C.’s causing injury to Thomas was of “such nature and degree that [C.L.F.’s] disregard thereof constitute^] a gross deviation from the standard of conduct that a reasonable person would [have] observed in the situation.”
Viewed in a light most favorable to the State, the evidence was insufficient to establish that C.L.F. was “aware of and consciously disregarded a substantial and unjustifiable risk” that Thomas would suffer physical injury when C.L.F. insulted M.C.. As detailed above, the State’s evidence tended to establish the following: On July 20, 2011, C.L.F., M.C., and nine other juveniles were eating breakfast in the cafeteria at the Center. While eating breakfast, C.L.F. began insulting M.C. M.C., however, neither reacted to, nor responded to, C.L.F.’s insults. Thomas, a counselor at the Center, told C.L.F. to remove himself from the situation, but C.L.F. ignored her. C.L.F. then told M.C. that he was “going to kick [M.C.’s] ‘A’ ” and that M.C. did not “know who [he was] messing with.” Thomas then told C.L.F. to come over to her and talk to her about his issues. As C.L.F. was walking toward Thomas he continued to get louder and continued to threaten M.C. ■ M.C., however, sat quietly and did not say anything to C.L.F. C.L.F., knowing M.C.’s gang affiliation, called M.C. a “fake ass blood.” M.C. then picked up a chair and charged C.L.F. Thomas, however, tried to stop M.C., and M.C. pushed her out of the way so he could get to C.L.F. As a result, Thomas fell to the ground and injured her arm.
At the close of the State’s case-in-chief, the following occurred:
“[C.L.F.’s counsel]: Judge, I’d like to make a motion for directed verdict on assault. It’s an intent to cause an injury. Somebody attacks him, and a lady gets hit because he’s being attacked. If that’s not assault—
“[Prosecutor]: Well, Judge, I think if anything there’s a transfer that’s in here because you’ve heard plenty of evidence that [M.C.] was attempting to fight [C.L.F.] and, in fact, did contact him afterwards and threw him up against the wall. And the statute is very clear that it says if he causes injury to any person during that with that intent.
“[C.L.F.’s counsel]: Judge, that’s not what the facts are. The facts are he is walking away and somebody is chasing him and coming after him. Those are the facts. And while they were going after him they knocked somebody down, and he’s yelling and screaming.
“THE COURT: I understand what you’re saying, but the direct cause of the reason this guy was chasing him was him as far as I’m concerned, so I’m going to deny your motion.”
*296 (R. 27-28.) Thus, it appears that the State’s theory of criminal liability in this case was that C.L.F. committed third-degree assault by merely insulting M.C., which, it said, caused M.C. to react violently toward Thomas. The State, however, cites no authority — and this Court is aware of none — in which an insult alone has resulted in criminal liability when the insulted party reacts violently and causes intentional harm to a third party. This Court recognizes, however, that there could be circumstances in which criminal liability arises when individuals are aware that their words or actions will set in motion a chain of events and cause another person to harm a third party.
Although the State’s evidence in this case established that C.L.F.’s actions toward M.C. prompted M.C. to react violently toward Thomas, the State’s evidence did not establish that C.L.F. was “aware” that insulting M.C. would result in M.C.’s pushing and injuring Thomas. We recognize that although the State’s evidence established that Thomas had warned C.L.F. not to sit near M.C. because of previous “arguments” (R. 5), a previous argument does not establish that C.L.F. was aware that M.C. would react violently and would cause physical injury to Thomas. Because the State’s evidence failed to establish that C.L.F. acted “recklessly” as that term is defined in § 13A-2-2, Ala. Code 1975, the juvenile court erred when it denied C.L.F.’s motion for a judgment of acquittal. Accordingly, we reverse the juvenile court’s judgment and render a judgment of acquittal for C.L.F.
REVERSED AND JUDGMENT RENDERED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ, concur.

. Thomas testified that M.C.'s gang affiliation is “something all the students know.”

. We recognize that in his brief C.L.F. first argued that he properly preserved his insufficient-evidence claim for appellate review. (C.L.F.'s brief, pp. 9-12.) Because C.L.F. filed a timely posttrial motion under Rule 20.3, Ala. R.Crim. P., this issue is properly preserved for review. Furthermore, "the State concedes that [C.L.F.] seems to have sufficiently preserved his issue for review.” (State’s brief, p. 9.)