Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

————————————————

## CR-2023-0008

————————————————

## Trevor Lynn Cofer

## v.

## State of Alabama

## Appeal from Lee Circuit Court
## (CC-20-761)

KELLUM, Judge.

Trevor Lynn Cofer was convicted of four counts of voyeurism in the first degree. See § 13A-11-41, Ala. Code 1975. For Counts I, II, and III of the indictment, the trial court sentenced Cofer to 10 years' imprisonment, split the sentences, and ordered Cofer to serve 117 days

in confinement, followed by 8 years on probation. For Count IV of the indictment, the trial court sentenced Cofer to 10 years' imprisonment, split the sentence, and ordered Cofer to serve 1 year in confinement followed by 8 years on probation.

The evidence adduced at trial indicated the following. On October 13, 2019, around 9:30 or 9:45 p.m., Jonathan Squadrito went to visit E.H., then a 19-year-old student at Auburn University, at a house she shared with three roommates, one of whom was Valerie Tarazi. The evidence indicated that Cofer lived in the house next door to E.H., that E.H.'s bedroom window was on the side of the house facing Cofer's house, and that there was about 15 feet between the two houses. Because the parking area in front of E.H.'s house was full, Squadrito parked a short distance away. As he walked toward E.H.'s house, he saw a man at the side of the house, whom he identified at trial as Cofer, standing outside E.H.'s bedroom window; Cofer "had what looked to be a phone in his hand recording her through her window" (R. 132), "where there was a break in her ... blinds." (R. 133.) Squadrito telephoned E.H., but she did not answer so he telephoned Tarazi and "told her that there was somebody outside of [E.H.'s] room, to get her out of the room." (R. 133.)

2

Tarazi turned on her bedroom light, which startled Cofer, who then tried to hide in the bushes. Squadrito approached Cofer to detain him. Cofer tried to run away but Squadrito gave chase and caught him, holding him "on the ground to make sure that he couldn't get up and try and run away again." (R. 139.) While he was on the ground, Cofer asked Squadrito not to call the police. Squadrito asked Cofer for his cellular telephone, and Cofer gave him the phone as well as the password to unlock it. Squadrito searched the phone and found several videos of E.H. He also checked what he termed the "hidden tab" in the photo section of the phone and found additional videos of E.H. where she was partially nude. (R. 141.) Squadrito kept Cofer's phone in his possession until police arrived.

E.H. testified that, as she was waiting for Squadrito to arrive at her house the night of October 13, 2019, she checked her phone and noticed several missed calls from him. At about the same time, Tarazi came into her room and told her that she should answer her phone. E.H. then called Squadrito, who made her aware of the situation happening outside the house. E.H. and her roommates remained inside the house until police arrived. When E.H. went outside, Squadrito informed her that Cofer had

3

on his phone several videos of her in various stages of undress dating back to September. In addition, the officers at the scene showed her one or two of the videos on Cofer's phone and she identified herself in those videos. In one of the videos, E.H. said, she "did not have any clothes over [her] breasts ... [and] was very clearly naked." (R. 165.) In another video, she "was not fully dressed," though she could not remember exactly what she was wearing in the video. (R. 167.)

E.H. testified that she had plastic blinds over her bedroom window, but "[t]hey had a few holes in them." (R. 168.) She also said that sometimes she opened the blinds, but that she never thought someone could see into her bedroom. She also said that, after the incident, she was more security conscious and she determined that no one could see into her bedroom from the parking area in front of her house. E.H. testified that she did not know that she was being recorded and that she did not consent to anyone watching or recording her in her bedroom. She also stated that she "expected privacy" in her own bedroom "whether the window is open or closed or the blinds are open or closed." (R. 191.)

Jonathan Gaither, a patrol sergeant with the Auburn Police Department, testified that the night of October 13, 2019, he responded to

4

a call about a "peeping Tom." (R. 195.) When Sgt. Gaither arrived at E.H.'s residence, Cofer was sitting on the curb and several people were standing around him. Squadrito informed Sgt. Gaither about what had happened and gave Sgt. Gaither Cofer's cell phone. Sgt. Gaither then detained Cofer, placing him in the back of the patrol car of another responding officer. After speaking with E.H., Sgt. Gaither advised Cofer of his Miranda v. Arizona, 384 U.S. 436 (1966), rights, and Cofer admitted that he had been recording E.H. with his phone through her bedroom window since "sometime in September." (R. 209.) Cofer later gave another statement to police, in which he again admitted to recording E.H. several times. He said, however, that the day he was caught was the only time he had been right outside E.H.'s window when he recorded her; the rest of the videos, he said, were recorded from inside his own home looking through his own window. Cofer gave Sgt. Gaither permission to look through his phone and told him the password to unlock it. Sgt. Gaither looked at the videos on the phone and, in "a couple," he could not tell whether it was E.H., so he showed those videos to E.H. and E.H. verified that she was the one depicted in the videos. (R. 210.) According

5

to Sgt. Gaither, the videos were made through "cracks" in the blinds covering the window. (R. 211.)

The State introduced into evidence 21 videos that were extracted from Cofer's cell phone. This Court was unable to open three of the videos. The quality of the remaining videos is beyond poor, and many of them depict only a blank, black screen, or are so distorted that nothing is visible. In the video labeled IMG0002, recorded on September 26, 2019, and giving rise to the charge in Count I of the indictment, E.H. is seen from the waist up through partially closed blinds; she appears to be changing clothes and her bare breasts are visible. This Court was unable to open the video labeled IMG0007, recorded on October 2, 2019, and giving rise to the charge in Count II of the indictment, but as the State correctly points out, Cofer concedes in his brief that E.H. is "partially nude" in that video.[1] (Cofer's brief, p. 13.) In the video labeled IMG0020, one of two videos recorded on October 5, 2019, and giving rise to the charge in Count III of the indictment, the blinds are pulled up and E.H. is seen standing in her bedroom; she appears to be wearing a sweatshirt

---

[1]In addition, during closing argument, Cofer argued that this video depicted E.H. "standing nude or partially nude" in front of her window. (R. 365.)

6

and her bare buttocks are visible. In the video labeled IMG0037, one of several videos recorded on October 13, 2019, and giving rise to the charge in Count IV of the indictment, E.H. is seen through a small gap in the blinds walking from her bedroom into what appears to be a bathroom; at one point, she stands in front of a mirror in the bathroom and the reflection from the mirror shows her breasts covered with a sports bra. In the video labeled IMG0038, also recorded on October 13, 2019, E.H. is again seen in the reflection of the mirror wearing a sports bra. In the video labeled IMG0040, also recorded on October 13, 2019, E.H. is seen standing in her bedroom in profile. She appears to be topless, and the video shows her from the top of her head down to about two inches below the top of her left shoulder.

Chelsea Williams, a sergeant in the investigations division of the Auburn Police Department, testified that, in addition to the videos of E.H., Cofer's phone contained numerous Internet searches. According to Sgt. Williams, on September 23, 2019, three days before he first videoed E.H., Cofer conducted searches on the Internet using the following phrases: "Pretty Girl Strips at Home," "Beautiful 19 Year Old Strips on Cam," and "Young College Girls." (R. 288.)

7

After both sides rested and the trial court instructed the jury on the applicable principles of law, including the lesser-included offense of voyeurism in the second degree, the jury found Cofer guilty of four counts of voyeurism in the first degree as charged in the indictment. After sentencing, Cofer filed a motion for a new trial, which was denied by operation of law. See Rule 24.4, Ala. R. Crim. P. This appeal followed.

## I.

Cofer first contends that the trial court erred in allowing the State, over his objection, to present evidence about the Internet searches extracted from his cell phone. As he did at trial, Cofer argues that the searches were irrelevant and inadmissible under Rule 404(b), Ala. R. Evid., that the State did not give him pretrial notice of its intent to introduce the searches as required by Rule 404(b), and that the searches were more prejudicial than probative.

The record reflects that, in his discovery motion, Cofer requested that the State provide notice of its intent to present collateral-act evidence under Rule 404(b). The State did not provide Cofer with specific notice of its intent to introduce evidence of the Internet searches, but the record reflects that, as part of discovery, the State provided Cofer with

8

all the data extracted from his cell phone, which included the Internet searches. When the State sought to introduce the evidence during trial, Cofer objected on the same grounds he now raises on appeal. With respect to notice, Cofer's counsel specifically argued that, although the prosecutors had provided him with the data extracted from Cofer's cell phone, they did not provide him with the software application necessary to read that data. The prosecutors responded that Cofer's counsel had never notified them that he was unable to read the data. The trial court found that most of the searches were irrelevant and inadmissible, but concluded that the few searches made only three days before Cofer recorded E.H. for the first time that contained search terms closely aligned with the facts of the crimes were admissible. Concerned about the possible lack of notice, however, the trial court instructed the State to wait until the next day before introducing the evidence about the searches so that Cofer would have the overnight recess to review the evidence. The following day, the State offered to question Sgt. Williams about the searches rather than introduce a report containing information about the searches, and Cofer indicated he "would rather" the State present testimony than documentation. (R. 282.) The State then

9

questioned Sgt. Williams about the Internet searches, over Cofer's "continuing objection." (R. 287.)

At the time of Cofer's trial in May 2022, Rule 404(b) provided:[2]

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

With respect to notice, there is no question that the State did not provide Cofer with specific pretrial notice of its intent to introduce evidence of the Internet searches, but Cofer did receive, as part of discovery, all the data extracted from his cell phone, which included the Internet searches. Although it appears Cofer did not receive the software application necessary to read that data, he failed to inform the prosecutor of that fact before trial. In addition, the trial court gave Cofer an

---

[2]Rule 404(b) was amended effective May 1, 2023, to, among other things, require the State to provide pretrial notice of its intent to introduce collateral-acts evidence regardless of whether notice is requested by the defendant.

overnight recess so that he could familiarize himself with the evidence. Under these circumstances, any error in the State not providing pretrial notice was harmless. Cf. Ex parte Davis, 875 So. 2d 276, 278 (Ala. 2003) ("Davis agreed that he had knowledge of the evidence contained in the State's file; therefore, even if we were to hold that the State erred in failing to respond officially to the Rule 404(b) notice request, the error was at most harmless.").

As for the admissibility of the evidence, we conclude that it was relevant and admissible to show Cofer's motive and intent.

> "'"Motive is an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 26, 65 So. 972, 977 (1914). Motive is "that state of mind which works to 'supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" C. Gamble, Character Evidence[: A Comprehensive Approach], at 42 [(1987)]. "Furthermore, testimony offered for the purpose of showing motive is always admissible. It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." (Emphasis in original, citations omitted.) Bowden v. State, 538 So. 2d 1226, 1235 (Ala. 1988).'"

Towles v. State, 168 So. 3d 133, 143 (Ala. 2014) (quoting Ex parte Register, 680 So. 2d 225, 227 (Ala. 1994)). In addition, an element of

voyeurism in the first degree is that the crime is committed "for the purpose of arousing or gratifying the sexual desire of any person." § 13A-11-41(a), Ala. Code 1975.

As the State points out, the Texas Court of Appeals recently addressed a very similar issue in Mays v. State, (No. 05-21-01033-CR, Nov. 20, 2023) (Tex. Ct. App. 2023) (not reported in the Southwestern Reporter). There, the defendant was charged with continuous sexual abuse of a child, specifically, his daughter. Data extracted from the defendant's cell phone included "internet searches for 'dad' and 'daughter' pornography, 'teasing daddy' video views, and a 'frequently visited site' of 'free daughter' pornography." The Court upheld the admission of the Internet searches under the motive and intent exceptions to Rule 404(b), explaining:

> "Mays was charged with continuous sexual abuse of a child. See TEX. PENAL CODE § 21.02(b), (c). 'Intent to arouse and gratify sexual desire' is an element of the predicate offense of indecency with a child, with which the trial court charged the jury. Id. § 21.11(a)(1), (c). The State may prove intent through circumstantial evidence. See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Thus, the internet searches and frequently visited site history directed at 'dad,' 'daughter,' and 'free daughter porn,' were admissible under Rule 404(b)[, Texas R. Evid.,] because they tended to show Mays's intent or motive to arouse or gratify his sexual desire with his daughter. See Sarabia v. State, 227 S.W.3d

320, 324 (Tex. App. -- Fort Worth 2007, pet. ref'd) (in defendant's trial for aggravated sexual assault of a child, images depicting child pornography compiled from defendant's computer discs were admissible under Rule 404(b) because they tended to show intent or motive to arouse or gratify his sexual desire with underage boys); Wooley v. State, No. 05-09-00455-CR, (Tex. App. -- Dallas Dec. 30, 2010, no pet.) (not designated for publication) (child pornography photos found on defendant's computer were relevant circumstantial evidence of defendant's intent to arouse or gratify his sexual desire in trial for aggravated sexual assault of a child and thus admissible under Rule 404(b))."

Cofer's Internet searches on September 23, 2019, using the phrases "Pretty Girl Strips at Home," "Beautiful 19 Year Old Strips on Cam," and "Young College Girls" clearly evidence an inducement for Cofer, only three days later on September 26, 2019, to begin recording, in various stages of undress, the 19-year-old college student living next door to him, and create a reasonable inference that Cofer's purpose in making the recordings was to arouse or satisfy his sexual desire. Moreover, after thoroughly reviewing the record, we have no trouble concluding that the probative value of the evidence outweighed its prejudicial effect. Therefore, the trial court did not err in allowing evidence of the Internet searches.

II.

Cofer also contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the evidence was insufficient to sustain his convictions.

> "'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). '"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). '"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)."

Gavin v. State, 891 So. 2d 907, 974 (Ala. Crim. App. 2003).

Section 13A-11-41(a), Ala. Code 1975, provides:

14

"A person commits the crime of voyeurism in the first degree if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly photographs or films the intimate areas of another person, whether through, under, or around clothing, without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place."

"Intimate areas" are defined as "[a]ny portion of a person's body, whether or not covered by undergarments, that are traditionally covered by undergarments to protect that portion from public view, including genitals, pubic areas, buttocks, and female breasts." § 13A-11-40(a)(1), Ala. Code 1975. "Undergarments" are defined as "[a]rticles of clothing worn under clothing that conceal intimate areas from view." § 13A-11-40(a)(3), Ala. Code 1975.

With respect to Counts I, II, and III of the indictment, Cofer argues that the State failed to prove that E.H. had a reasonable expectation of privacy in her bedroom. Specifically, he argues that the videos giving rise to these three charges were recorded from inside his own home, and the blinds in E.H.'s bedroom window were fully open, leaving her bedroom in plain view. According to Cofer, there was a clear line of sight into E.H.'s bedroom from the public parking area in front of the houses, and no reasonable person would "believe that a person had a reasonable

expectation of privacy standing in front of an open window that was completely visible by a busy public parking lot." (Cofer's brief, p. 12.) This argument is meritless.

"The expectation of privacy reaches its zenith in the home." United States v. McKenzie, 13 F.4th 223, 235 (2nd Cir. 2021). "The very fact that a person is in his own home raises a reasonable inference that he intends to have privacy," United States v. Taborda, 635 F.2d 131, 138 (2d Cir. 1980), and the "ability to observe through open windows what happens inside a home does not altogether extinguish the homeowner's otherwise reasonable expectation of privacy in the home itself." United States v. Wells, 648 F.3d 671, 678 (8th Cir. 2011). In State v. Moser, 179 Wash. App. 1040 (2014) (not reported in the Pacific Reporter), the Washington Court of Appeals found sufficient evidence to support a conviction for voyeurism under a statute similar to Alabama's where the victim had the lights on, the blinds open, and Christmas decorations around one window. The Court held that "leaving blinds open, leaving lights on, and decorating a window do not negate [one's] privacy interests in any material way." We are not required "to live in windowless mausoleums to preserve our privacy interests, and the mere existence of

16

a window does not give license to anyone ... to peep through ... blinds or curtains." <u>Holt v. Commonwealth</u>, (No. 2015-CA-000985-MR, January 6, 2017) (Ky. Ct. App. 2017) (not reported in the Southwestern Reporter). We agree.

Here, E.H.'s bedroom window was not at the front of the house, where anyone walking or driving by could see into her bedroom. Rather, it was on the side of the house, facing an area where people were not likely to congregate. Although her window faced the side of Cofer's house, which was about 15 feet away, a person does not forfeit the expectation of privacy simply by living next door to someone. In addition, we point out that, in the video giving rise to the charge in Count I of the indictment, E.H.'s blinds were partially closed, not fully open as Cofer contends. Viewing the evidence in a light most favorable to the State, as we must, we conclude that there was sufficient evidence from which the jury could have reasonably concluded that E.H. had a reasonable expectation of privacy in her bedroom, regardless of whether the blinds were open or closed. Therefore, the trial court properly denied Cofer's motion for a judgment of acquittal as to Counts I, II, and III of the indictment.

With respect to Count IV of the indictment, Cofer argues that the State failed to prove that he recorded E.H.'s intimate parts. According to Cofer, "[i]n the video, the alleged victim is seen twice and the only portion of her body visibly seen was her head and left shoulder." (Cofer's brief, pp. 13-14.) This argument fails to recognize that the charge in Count IV of the indictment was based on multiple videos recorded on October 13, 2019, not just one. Although in one of the videos, only E.H.'s bare shoulder and neck are visible, two other videos depict E.H.'s breasts covered by a sports bra. As noted above, voyeurism in the first degree requires recording "the intimate areas of another person, whether through, under, or around clothing," § 13A-11-41(a), and "intimate parts" include "female breasts," "whether or not covered by undergarments." § 13A-11-40(a)(1) (emphasis added). Because two of the videos giving rise to the charge in Count IV of the indictment depicted E.H.'s breasts covered by a sports bra, the State proved that Cofer recorded E.H.'s intimate parts. Therefore, the trial court properly denied Cofer's motion for a judgment of acquittal as to Count IV of the indictment.

III.

Although not mentioned by either party, we take notice that the probationary terms of Cofer's split sentences are illegal. It is well settled that "[m]atters concerning unauthorized sentences are jurisdictional." Hunt v. State, 659 So. 2d 998, 999 (Ala. Crim. App. 1994). Therefore, this Court may take notice of an illegal sentence "at any time and may do so even ex mero motu." Moore v. State, 40 So. 3d 750, 753 (Ala. Crim. App. 2009). See also Ex parte McGowan, 346 So. 3d 10, 13 (Ala. 2021) ("This Court has routinely held that the imposition of a sentence in a criminal case that is not authorized by statute creates a jurisdictional defect that is nonwaivable and that can be raised at any time.").

Voyeurism in the first degree is a Class C felony. See § 13A-11-41(b), Ala. Code 1975. At the time of the crimes, § 15-18-8(b), Ala. Code 1975, provided,[3] in relevant part:

> "(b) Unless a defendant is sentenced to probation, drug court, or a pretrial diversion program, when a defendant is convicted of an offense that constitutes a Class C or D felony offense and receives a sentence of not more than 15 years, the judge presiding over the case shall order that the convicted defendant be confined in a prison, jail-type institution,

---

[3]Generally, "[a] defendant's sentence is determined by the law in effect at the time of the commission of the offense." Davis v. State, 571 So. 2d 1287, 1289 (Ala. Crim. App. 1990).

treatment institution, or community corrections program for a Class C felony offense or in a consenting community corrections program for a Class D felony offense, except as provided in subsection (e), for a period not exceeding two years in cases where the imposed sentence is not more than 15 years, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of the law to the contrary and that the defendant be placed on <u>probation for a period not exceeding three years</u> and upon such terms as the court deems best."

(Emphasis added.) Although both the base sentences -- 10 years' imprisonment -- and the confinement portion of the sentences -- 117 days' and 1 year's imprisonment -- were legal, the 8-year probationary terms exceeded the maximum authorized by § 15-18-8(b).

Based on the foregoing, we affirm Cofer's convictions for four counts of voyeurism in the first degree. However, we remand this cause for the trial court to conduct another sentencing hearing, at which Cofer is entitled to be present and represented by counsel, and to impose probationary terms in accordance with § 15-18-8(b) as it read at the time of the crimes. Because both the base sentences and the confinement portions of the sentences were legal, they may not be changed. Due return shall be filed within 63 days of the date of this opinion and shall include a transcript of the sentencing hearing conducted on remand and the trial court's amended sentencing order.

AFFIRMED AS TO CONVICTIONS; REMANDED WITH INSTRUCTIONS AS TO SENTENCES.

Windom, P.J., and McCool, Cole, and Minor, JJ., concur.